Present: Carrico, C.J., Compton, Hassell, Keenan, Koontz, and
Kinser, JJ., and Poff, Senior Justice

BOARD OF SUPERVISORS
OF AUGUSTA COUNTY, ET AL.
                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 990031            November 5, 1999

COUNTRYSIDE INVESTMENT COMPANY, L.C.

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Duncan M. Byrd, Jr., Judge

In this appeal, we consider whether certain provisions in a county's subdivision ordinance violate the Dillon Rule.

The facts relevant to our disposition of this appeal are not in dispute. Countryside Investment Company, L.C. (Countryside Investment), is the contract purchaser of a parcel of land consisting of approximately 140 acres located in Augusta County. The parcel was given an R-10 residential zoning classification under the Augusta County Zoning Ordinance in effect in 1973. This ordinance, which established minimum lot size and minimum floor space requirements, provided for a minimum lot area of 9,000 square feet for property having an R-10 zoning classification.

In 1995, the Augusta County Board of Supervisors enacted a new zoning ordinance which prescribed a minimum lot area requirement of 12,000 square feet. Pursuant to the terms of the new ordinance, the parcel at issue in this appeal enjoyed the benefit of a "grandfather" clause which retained the

minimum lot area requirement of 9,000 square feet for lots which might be subdivided within the parcel until the year 2006.

In September 1997, Countryside Investment submitted to the Augusta County Department of Community Development a master plan for a proposed subdivision of the parcel which would contain approximately 427 residential lots. The Department reviewed the master plan and concluded that the plan complied with the technical requirements of the County's Subdivision Ordinance. The Augusta County Planning Commission reviewed the master plan and unanimously recommended approval by the Board of Supervisors.

The Board discussed the master plan during several meetings. The Board also considered comments from the public and evidence about the impact that the proposed subdivision would have upon the County's water and sewer capacity, public school division, transportation capacities, drainage, and adjacent neighborhoods.

At a meeting in November 1997, the Board tentatively denied approval of the master plan. The Board enumerated several reasons for its tentative denial: (1) "a subdivision of this size located in an area that is predominantly rural in character should, consistent with good planning practice, anticipate, account for and accommodate some of the needs for

2

non-residential community-type facilities [such as] . . . sites for religious institutions, passive and active recreational facilities, and day-care centers"; (2) "the overall density" of the subdivision and "its potential significant impact on public facilities and public utilities in the northern sector of Augusta County, should not exceed a figure of about two residences per acre, or approximately 270 single-family residences for the entire tract"; (3) some of the property may not be suitable for residential development and; the "current proposal to construct 427 residences . . . would result in an increase in population that cannot be readily accommodated by the existing public facilities and utilities serving [that] area."

The Board, in an attempt to modify the master plan, recommended that Countryside Development:  increase the size of the residential lots; create a "number of large lots of varying sizes suitable for the construction of community-type facilities such as churches, nursery schools, and/or day care centers"; set aside portions of the property "which are least suitable for development as open space designed to preserve natural areas where the residents can engage in passive and active leisure and recreational activities"; and devote "more space, if necessary, to adequately deal with storm water drainage and detention."

Countryside Investment initiated this proceeding against the Board and Augusta County (collectively the Board) in the circuit court pursuant to Code § 15.2-2260, seeking judicial review of the Board's disapproval of the preliminary master plan.  The Board filed responsive pleadings, the parties stipulated certain evidence, and the circuit court conducted an ore tenus hearing.

The circuit court ruled, among other things, that §§ 21-6 and -7 of the Augusta County Subdivision Ordinance, upon which the Board relied when it tentatively denied the master plan, violated the Dillon Rule because those sections were not authorized by the enabling legislation in Code §§ 15.2-2241 and -2242.  The court entered a decree which ordered approval of the master plan, and enjoined the Board from taking any action inconsistent with the decree.  The Board appeals.

Code § 15.2-2240, which is a part of the Virginia Land Subdivision and Development Act, states that "[t]he governing body of every locality shall adopt an ordinance to assure the orderly subdivision of land and its development."[1]  Code § 15.2-2241, which prescribes the mandatory provisions which must be included in a subdivision ordinance enacted by a governing body, states in relevant part:

---

[1] The Virginia Land Subdivision and Development Act consists of Code §§ 15.2-2240 through -2279.

4

"A subdivision ordinance shall include reasonable regulations and provisions that apply to or provide:

. . . .

"3. For adequate provisions for drainage and flood control and other public purposes, and for light and air, and for identifying soil characteristics; . . . ."

The Board, purportedly relying upon Code § 15.2-2241, enacted the Augusta County Subdivision Ordinance which contained the following provisions pertinent to our resolution of this appeal:

"§ 21-6.

"A. All lots shall be of sufficient size, shape and dimension to meet all the [zoning] requirements of . . . this Code.

"B. Size and shape of all lots shall be subject to approval of the Board of Supervisors. In no case shall the area or dimensions be less than that required by Chapter 25 or by approved proffered conditions applicable to any zoning district.

"§ 21-7.

"If in the opinion of the Board of Supervisors any tract of land is unsuitable for subdivision, it shall not be subdivided. A tract shall be deemed unsuitable for subdivision if adequate provision cannot be made for any public purpose, including, but not limited to: drainage and flood control, protection of light and air, and the preservation of a rural environment which is also conducive to a diverse agricultural, industrial, commercial and residential economy."

The Board argues that the circuit court erred by holding that §§ 21-6 and -7 of the Subdivision Ordinance are void because they violate the Dillon Rule. Continuing, the Board states that when "the General Assembly has delegated the state's police power, the locality is not required to have

5

specific authority for every provision in its ordinance. Considerable discretion is left to the local government in such matters." The Board also asserts that even if specific authority for §§ 21-6 and -7 is necessary, such authority does exist. Responding, Countryside Investment asserts that even though the power of subdivision control is a delegation of the State's police power to a local governing body, such authority is subject to statutorily prescribed limitations; §§ 21-6 and -7 of Augusta County Subdivision Ordinance exceed those limitations and, thus, violate the Dillon Rule. We agree with Countryside Investment.

We have held that the General Assembly, in providing for local control of land subdivision, delegated to each locality a portion of the police power of this Commonwealth. National Realty Corp. v. City of Virginia Beach, 209 Va. 172, 174-75, 163 S.E.2d 154, 156 (1968); Bd. of Supervisors v. Georgetown Land Co., 204 Va. 380, 383, 131 S.E.2d 290, 292 (1963). However, we have also recognized that "[t]he power of a municipality, unlike that of the State legislature, must be exercised pursuant to an express grant." National Realty Corp., 209 Va. at 175, 163 S.E.2d at 156; see also Bd. of Supervisors v. Reed's Landing Corp., 250 Va. 397, 400, 463 S.E.2d 668, 669 (1995); Hylton Enterprises v. Bd. of Supervisors, 220 Va. 435, 440, 258 S.E.2d 577, 581 (1979).

We stated in City of Chesapeake v. Gardner Enterprises, 253 Va. 243, 246, 482 S.E.2d 812, 814 (1997), that

> "[t]he Dillon Rule of strict construction controls our determination of the powers of local governing bodies.  This rule provides that municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable.  Ticonderoga Farms v. County of Loudoun, 242 Va. 170, 173-74, 409 S.E.2d 446, 448 (1991); City of Richmond v. Confrere Club of Richmond, 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).  When a local ordinance exceeds the scope of this authority, the ordinance is invalid.  See City of Richmond, 239 Va. at 80, 387 S.E.2d at 473; Tabler v. Board of Supervisors, 221 Va. 200, 204, 269 S.E.2d 358, 361 (1980)."

We specifically discussed the application of the Dillon Rule to counties in Bd. of Supervisors v. Horne, 216 Va. 113, 117, 215 S.E.2d 453, 455-56 (1975):

> "In Virginia the powers of boards of supervisors are fixed by statute and are limited to those conferred expressly or by necessary implication.  Gordon v. Fairfax County, 207 Va. 827, 832, 153 S.E.2d 270, 274 (1967); Johnson v. Goochland County, 206 Va. 235, 237, 142 S.E.2d 501, 502 (1965).  This rule is a corollary to Dillon's Rule that municipal corporations have only those powers expressly granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable.  City of Richmond v. County Board, 199 Va. 679, 684-85, 101 S.E.2d 641, 644-45 (1958)."

In National Realty Corp., supra, we considered whether an ordinance which imposed a fee for the examination and approval of final subdivision plats and made payment of the fee a prerequisite to the recording of the plat by the clerk of the

7

circuit court contravened the Virginia Land Subdivision and Development Act.  In National Realty Corp., we acknowledged, as we recognize here, that the General Assembly, in providing for local control of land subdivision, delegated a portion of its police power to local governing bodies.  Provisions in a local subdivision ordinance, however, must derive power from an authorization from the General Assembly.  209 Va. at 177, 163 S.E.2d at 157-58.  Since the local governing body was not empowered to impose the fee, we held the ordinance invalid. Id., 163 S.E.2d at 158.

We hold that §§ 21-6 and -7 of the County's Subdivision Ordinance are void because the General Assembly did not authorize the Board to enact the challenged requirements in a subdivision ordinance.  Neither Code § 15.2-2241, which prescribes the mandatory provisions which must be included in a subdivision ordinance, nor Code § 15.2-2242, which prescribes optional provisions that may be included in a subdivision ordinance, authorizes a governing body to enact provisions in a subdivision ordinance which specify the size and shapes of lots to be subdivided.  Additionally, neither Code § 15.2-2241 nor -2242 authorizes a governing body to

prohibit a subdivision of property if the proposed subdivision is not conducive to the preservation of a rural environment.[2]

The Board asserts that it has considerable discretion when deciding what to include in a subdivision ordinance. We disagree. As we have already stated, pursuant to the strict construction required by the Dillon Rule, the Board does not have unfettered discretion when deciding what matters it may include in its subdivision ordinance. Rather, the Board must include those requisites which are mandated in Code § 15.2-2241 and may, at the Board's discretion, include the optional provisions of a subdivision ordinance contained in Code § 15.2-2242. Additionally, the Board is entitled to exercise discretion only to the extent permitted by Code §§ 15.2-2241 and -2242. See Helmick v. Town of Warrenton, 254 Va. 225, 232-33, 492 S.E.2d 113, 117 (1997). The Board is not, however, permitted to ignore the requisites contained in Code §§ 15.2-2241 and -2242 and, under the guise of a subdivision ordinance, enact standards which would effectively permit it

---

[2] Our holding does not impair the County's power to enact zoning ordinances which prescribe minimum lot area requirements, Code § 15.2-2280, or standards which would permit the County to consider the rural character of a community when making zoning decisions, Code § 15.2-2283; Byrum v. Board of Supervisors, 217 Va. 37, 39, 225 S.E.2d 369, 371 (1976).

9

to rezone property in a manner inconsistent with the uses permitted by the property's zoning classification.

We find no merit in the Board's argument that Code § 15.2-2200 authorizes the challenged provisions in the County's Subdivision Ordinance.  Code § 15.2-2200 states:

> "This chapter is intended to encourage localities to improve the public health, safety, convenience and welfare of its citizens and to plan for the future development of communities to the end that transportation systems be carefully planned; that new community centers be developed with adequate highway, utility, health, educational, and recreational facilities; that the need for mineral resources and the needs of agriculture, industry and business be recognized in future growth; that residential areas be provided with healthy surroundings for family life; that agricultural and forestal land be preserved; and that the growth of the community be consonant with the efficient and economical use of public funds."

This statute, a general declaration of the General Assembly's intent for Chapter 22 of Title 15.2 concerning planning, subdivision of land, and zoning, does not confer upon the Board the power to enact a subdivision ordinance which is more expansive than the enumerated requisites contained in Code §§ 15.2-2241 and -2242.

In view of the foregoing, we do not consider the Board's remaining assignments of error or Countryside Investment's assignments of cross-error.  Accordingly, we will affirm the decree of the circuit court.

<u>Affirmed</u>.

10