PRESENT:   Keenan, Koontz, Kinser, Lemons, and Millette, JJ., and
           Carrico and Lacy, S.JJ.

MARBLE TECHNOLOGIES, INC., ET AL.

                                             OPINION BY
v.          Record No. 090043      JUSTICE CYNTHIA D. KINSER
                                         FEBRUARY 25, 2010
CITY OF HAMPTON, ET AL.

           FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Wilford Taylor, Jr., Judge

      This appeal involves the Chesapeake Bay Preservation Act,

Code §§ 10.1-2100 through -2115 (the Act), and its implementing

regulations.  The dispositive issue asks whether the General

Assembly expressly or impliedly authorized a locality to utilize

as a criterion for designating Chesapeake Bay Preservation Areas

within its jurisdiction whether particular land is among the

"lands designated as part of the Coastal Barrier Resources

System," which is created by the Coastal Barrier Resources Act,

16 U.S.C. §§ 3501 through 3510 (2006 & Supp. II 2008) (the

federal Act).  Because we conclude that a locality is not

expressly or impliedly authorized to do so, we will reverse the

judgment of the circuit court.

                    MATERIAL FACTS AND PROCEEDINGS

      The Act requires, inter alia, "the counties, cities, and

towns of Tidewater Virginia [to] incorporate general water

quality protection measures into their comprehensive plans,

zoning ordinances, and subdivision ordinances."  Code § 10.1-

2100(A)(i); see also Code § 10.1-2109(B)-(D); 9 VAC § 10-20-10.[1]

To further the Act's implementation, the General Assembly

established the Chesapeake Bay Local Assistance Board (the

Board), Code § 10.1-2102, and in Code § 10.1-2107 authorized the

Board to "promulgate regulations which establish criteria for

use by local governments to determine the ecological and

geographic extent of Chesapeake Bay Preservation Areas," that

is, the "area delineated by a local government in accordance

with [the Board's] criteria" and thereby made subject to the

Act's restrictions.  Code § 10.1-2101; see also 9 VAC § 10-20-

40.  A Chesapeake Bay Preservation Area consists "of a Resource

Protection Area [RPA] and a Resource Management Area."  9 VAC

§§ 10-20-40 and 10-20-70.[2]

---

[1] The term "Tidewater Virginia" includes the City of Hampton
and a number of other jurisdictions.  Code § 10.1-2101.  "Any
local government . . . not a part of Tidewater Virginia may
. . . incorporate protection of the quality of state waters into
their comprehensive plans, zoning ordinances and subdivision
ordinances."  Code § 10.1-2110; see also 9 VAC § 10-20-10.

[2] The term "'Resource Protection Area' means that component
of the Chesapeake Bay Preservation Area comprised of lands
adjacent to water bodies with perennial flow that have an
intrinsic water quality value due to the ecological and
biological processes they perform or are sensitive to impacts
which may result in significant degradation to the quality of
state waters."  9 VAC § 10-20-40.  A "'Resource Management Area'
[is] that component of the Chesapeake Bay Preservation Area that
is not classified as the Resource Protection Area."  Id.

2

Pursuant to this authority, the Board promulgated criteria for a locality to utilize in designating lands within its jurisdiction to be included in an RPA. 9 VAC § 10-20-80. The Board's regulation establishes these relevant criteria:

> A. At a minimum, Resource Protection Areas shall consist of lands adjacent to water bodies with perennial flow that have an intrinsic water quality value due to the ecological and biological processes they perform or are sensitive to impacts which may cause significant degradation to the quality of state waters. In their natural condition, these lands provide for the removal, reduction or assimilation of sediments, nutrients and potentially harmful or toxic substances in runoff entering the bay and its tributaries, and minimize the adverse effects of human activities on state waters and aquatic resources.
>
> B. The Resource Protection Area shall include:
>
> 1. Tidal wetlands;
>
> 2. Nontidal wetlands connected by surface flow and contiguous to tidal wetlands or water bodies with perennial flow;
>
> 3. Tidal shores;
>
> 4. Such other lands considered by the local government to meet the provisions of subsection A of this section and to be necessary to protect the quality of state waters; and
>
> 5. A buffer area not less than 100 feet in width located adjacent to and landward of the components listed in subdivisions 1 through 4 above, and along both sides of any water body with perennial flow.

9 VAC § 10-20-80(A)-(B); see also 9 VAC § 10-20-40.

3

As directed by Code § 10.1-2109, the City of Hampton (the City) amended its zoning ordinance in 1990, creating Article Ten of the City's Zoning Code, which is entitled "Chesapeake Bay Preservation District," "to implement the Chesapeake Bay Preservation Act at the local level."[3]  City Zoning Ordinance § 17.3-60.  In January 2008, the City took the action at issue in this appeal, amending its definition of the buffer area of an RPA.  Now the buffer area is defined as "[a] variable width buffer area not less than one hundred (100) feet in width. . . . The variable width buffer area shall also include lands designated as part of the Coastal Barrier Resources System not otherwise listed as a Resource Protection Area Feature where present."[4]  City Zoning Ordinance § 17.3-62(16)(iv).  The City

_____

[3] In contrast to the Board's criteria for an RPA, the City's zoning ordinance includes only the first three components of an RPA set forth in 9 VAC § 10-20-80(B) and a buffer area, foregoing the catchall component for "other lands."  9 VAC § 10-20-80(B)(4).

[4] The City Zoning Ordinance defines the term "'Coastal Barrier Resources System'" as "an area comprised of undeveloped barrier islands and associated wetlands as designated under the Coastal Barrier Resources Act."  City Zoning Ordinance § 17.3-62(5).  The lands included in the Coastal Barrier Resources System are designated on a map maintained by the Secretary of the Interior and may be revised by the Secretary or by an act of Congress.  See 16 U.S.C. § 3503; cf. Bostic v. United States, 753 F.2d 1292, 1293-94 (4th Cir. 1985).

also amended its buffer area requirements for RPAs to incorporate the new definition.  City Zoning Ordinance § 17.3-64(2)(b)(iii)(3).

Marble Technologies, Inc. and Shri Ganesh, LLC (collectively, the plaintiffs), own two separate parcels of land located in the "Grand View" section of the City.  According to the plaintiffs, the "developable area" of their parcels was not included in an RPA or its buffer area prior to the 2008 amendment to the City zoning ordinance.  Following the amendment, the plaintiffs' parcels fell entirely "within the RPA portion of the City's Chesapeake Bay Preservation District" because the parcels are included in the Coastal Barrier Resources System.  The plaintiffs contend that their parcels are thus subject to additional development restrictions.[5]

Shortly after the amendment's passage, the plaintiffs filed a complaint seeking "declaratory and injunctive relief prohibiting the City's enforcement of the amendment as it

---

The City Zoning Ordinance defines the term "Resource Protection Area (RPA) Feature" as "that portion of an RPA that is not in the buffer area" and includes only the first three components listed in Subsection B of 9 VAC § 10-20-80 and City Zoning Ordinance § 17.3-62(16).  City Zoning Ordinance § 17.3-62(17).

[5] For example, land designated as part of the Coastal Barrier Resources System is "ineligible . . . for federal flood insurance on either new construction or substantial improvements to existing structures."  Bostic, 753 F.2d at 1293-94 (citing 42 U.S.C. § 4028).

5

applies to the [p]laintiffs' property."[6]  The plaintiffs alleged, among other things, that the City had "exceeded its authority in violation of Virginia law and Dillon's [R]ule."  In response, the City demurred, arguing that the plaintiffs could not prevail because they "failed to allege that the challenged ordinances are 'unreasonable, arbitrary or capricious,'" did not exhaust available administrative remedies before seeking declaratory relief, and "failed to plead the necessary facts to give rise to injunctive relief."[7]

The plaintiffs countered that the "arbitrary and capricious standard only arises in 'as applied' challenges," which they were not making.  Instead, the plaintiffs maintained that they were seeking a declaration that the 2008 amendment violates Dillon's Rule and is therefore void.  According to the plaintiffs, the exhaustion of administrative remedies rule was also not applicable because they were claiming the City exceeded its authority.  Finally, the plaintiffs asserted that they had "alleged sufficient facts to request either preliminary or permanent injunctive relief."

---

[6] The plaintiffs named the City of Hampton as well as the City Council of the City of Hampton as defendants.

[7] The City also filed a "Plea in Bar" and "Motion to Drop" that the circuit court denied.  Those rulings are not challenged in this appeal.  See Rules 5:17(c) and 5:18(b).

Following a hearing, the circuit court overruled in part and sustained in part the City's demurrer, dismissing with prejudice the plaintiffs' request for injunctive relief.  The court explained that an injunction would be unnecessary if the plaintiffs obtained declaratory relief.  Thus, the circuit court stated that "the sole issue" that remained was "whether the City acted ultra vires in passing this amendment to the zoning ordinance."  Shortly thereafter, the City answered the complaint, and the parties filed motions for summary judgment.

In support of their motion for summary judgment, the plaintiffs argued that the 2008 zoning "[a]mendment impermissibly permits the federal government to alter the City's zoning scheme without further action of the City Council in violation of the Dillon Rule," as the General Assembly has not "express[ly] or implcit[ly] grant[ed localities the] authority to delegate any portion of" the responsibility for designating RPAs within the locality's jurisdiction.  The plaintiffs maintained that because the General Assembly authorized only localities to designate lands subject to the Act's restrictions, the City did not have authority to incorporate land into an RPA by referencing the Coastal Barrier Resources System.  The City, however, maintained that the General Assembly had "expressly and implicitly grant[ed] the City the power to enact the challenged

7

ordinances," which must be "presumed valid and constitutional."[8] The plaintiffs countered that the presumption of validity urged by the City "does not apply to a court's determination under the Dillon Rule as to whether the locality has any authority to act," and that the City had not been granted the authority claimed.

After a hearing on the motions for summary judgment, the circuit court held that "the amendment is valid [and] does not violate Dillon's Rule" because "[t]he statute gives [the City] [this] authority." The court concluded that the City possessed "both" express and implied authority to pass the 2008 amendment. Accordingly, the circuit court granted the City's motion for summary judgment, denied the plaintiffs' motion, and entered judgment for the City. This appeal followed.

ANALYSIS

The issue we decide is whether the General Assembly expressly and/or impliedly authorized localities, through the Act or the regulations passed pursuant thereto, to utilize as a criterion for designating lands to be included in an RPA whether particular land is part of the federal Act's Coastal Barrier Resources System. This issue is one of law, which we review de

---

[8] The City also once again asserted that the plaintiffs had not exhausted their administrative remedies.

8

novo.[9]  Board of Zoning Appeals v. Board of Supervisors, 276 Va. 550, 552, 666 S.E.2d 315, 316 (2008).

Contrary to the City's argument that the zoning amendment at issue, as the legislative enactment of a locality, must be presumed valid unless proven to be clearly unreasonable, arbitrary, or capricious, "the Dillon Rule is applicable to determine in the first instance, from express words or by implication, whether a power exists at all.  If the power cannot be found, the inquiry is at an end."[10]  Commonwealth v. Board of

---

[9] In June 2008, the Board reviewed the City's "revised Phase I program," which included the zoning amendments at issue, and concluded that the revised program was "consistent with § 10.1-2109 of the Act and §§ 9 VAC 10-20-60 1 and 2 of the Regulations," subject to one modification.  The plaintiffs assert that the circuit court unduly relied on the Board's conclusion.  While the City disputes that assertion, it nevertheless argues that the Board's review "is strong, arguably conclusive evidence that the challenged ordinance is consistent with the Act, is valid and does not violate the Dillon Rule."  Without deciding what weight, if any, the circuit court gave to the Board's conclusion, we reiterate that our review is de novo.

[10] [W]here a power is found to exist but the question is whether it has been exercised properly, then the "reasonable selection of method" rule may be applicable, and . . . the inquiry is directed to whether there may be implied the authority to execute the power in the particular manner chosen.

Commonwealth v. Board of Arlington County, 217 Va. 558, 575, 232 S.E.2d 30, 41 (1977).

If a locality has the authority to enact a particular zoning ordinance, then

[i]ts action is presumed to be valid so long as it is not unreasonable and arbitrary.  The burden of proof

9

Arlington County, 217 Va. 558, 575, 232 S.E.2d 30, 41 (1977);

see also City Council of Alexandria v. Lindsey Trusts, 258 Va.

424, 427, 520 S.E.2d 181, 182 (1999) (" 'The Dillon Rule of

strict construction controls our determination of the powers of

local governing bodies.' ") (citation omitted).

The Dillon Rule provides that "municipal corporations have

only those powers that are expressly granted, those necessarily

or fairly implied from expressly granted powers, and those that

are essential and indispensable."  Board of Zoning Appeals, 276

Va. at 553-54, 666 S.E.2d at 317; accord Board of Supervisors v.

Countryside Investment Co., 258 Va. 497, 502-05, 522 S.E.2d 610,

612-14 (1999); City of Richmond v. Confrere Club of Richmond,

239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).  This is so because

"[a] municipal corporation has no element of sovereignty.  It is

a mere local agency of the state, having no other powers than

such as are clearly and unmistakably granted by the law-making

power."  Whiting v. Town of West Point, 88 Va. 905, 906, 14 S.E.

---

is on him who assails it to prove that it is clearly
unreasonable, arbitrary or capricious, and that it
bears no reasonable or substantial relation to the
public health, safety, morals, or general welfare.

Board of Supervisors v. Carper, 200 Va. 653, 660, 107 S.E.2d
390, 395 (1959); accord Cupp v. Board of Supervisors, 227 Va.
580, 596-97, 318 S.E.2d 407, 415-16 (1984).  "[I]f the
reasonableness of a zoning ordinance is fairly debatable[,] it
must be sustained."  Carper, 200 Va. at 660, 107 S.E.2d at 395;
accord Cupp, 227 Va. at 597, 318 S.E.2d at 416.

10

698, 699 (1892); see Hunter v. City of Pittsburgh, 207 U.S. 161, 178 (1907) ("Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them."). Thus, "[i]f there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." Board of Supervisors v. Reed's Landing Corp., 250 Va. 397, 400, 463 S.E.2d 668, 670 (1995); accord Confrere Club, 239 Va. at 79-80, 387 S.E.2d at 473; City of Winchester v. Redmond, 93 Va. 711, 714, 25 S.E. 1001, 1002 (1896).

In applying the Dillon Rule, we first examine the plain terms of the legislative enactment to determine whether the General Assembly expressly granted a particular power to the municipal corporation. See City of Chesapeake v. Gardner Enters., 253 Va. 243, 246-47, 482 S.E.2d 812, 814-15 (1997). If the power is not expressly granted, we then "determine whether the power . . . is necessarily or fairly implied from the powers expressly granted by the statute." Id. at 247, 482 S.E.2d at 815. "To imply a particular power from a power expressly granted, it must be found that the legislature intended that the grant of the express also would confer the implied." Board of Arlington County, 217 Va. at 577, 232 S.E.2d at 42. "Questions concerning implied legislative authority of a local governing

11

body are resolved by analyzing the legislative intent of the General Assembly." Tabler v. Board of Supervisors, 221 Va. 200, 202, 269 S.E.2d 358, 360 (1980). "Legislative intent is determined from the plain meaning of the words used." Confrere Club, 239 Va. at 80, 387 S.E.2d at 473; see Logan v. City Council, 275 Va. 483, 492, 659 S.E.2d 296, 301 (2008) ("We determine the General Assembly's intent from the words employed in the statutes."). Thus, "[t]he central focus of our analysis [in applying the Dillon Rule] is to ascertain and give effect to the General Assembly's intent in enacting the provisions." Id.

With these principles in mind, we proceed to the question before us: whether the General Assembly expressly or impliedly authorized the City to use as a criterion for designating RPAs in its jurisdiction whether particular land is included in the Coastal Barrier Resources System pursuant to the federal Act. The General Assembly expressly authorized counties, cities, and towns "to exercise their police and zoning powers to protect the quality of state waters consistent with the provisions" of the Act. Code § 10.1-2108. That authority, however, is limited to using the criteria created by the Board. The provisions of Code § 10.1-2100(A)(ii) direct localities to "define and protect" Chesapeake Bay Preservation Areas "in accordance with criteria established by the Commonwealth." The Act, in Code § 10.1-2109(A) and (C), mandates that localities "use the criteria

12

developed by the Board to determine the extent of the Chesapeake Bay Preservation Area within their jurisdictions," and directs "[z]oning in Chesapeake Bay Preservation Areas [to] comply with all criteria set forth in or established pursuant to [Code] § 10.1-2107," which is the provision empowering the Board to develop "criteria for use by local governments to determine the ecological and geographic extent of Chesapeake Bay Preservation Areas."  Code § 10.1-2107(A).  The provisions of Code § 10.1-2111 reiterate that "[l]ocal governments shall employ the criteria promulgated by the Board to ensure that the use and development of land in Chesapeake Bay Preservation Areas shall be accomplished in a manner that protects the quality of state waters consistent with the provisions of [the Act]."  And the definition given the term "Chesapeake Bay Preservation Area" is that of "an area delineated by a local government in accordance with criteria established pursuant to § 10.1-2107."[11]  Code § 10.1-2101.  Thus, we conclude the General Assembly expressly authorized localities to designate lands subject to the Act within their jurisdictions pursuant to the Board's criteria.

In relevant part, the Board's criteria require a locality to include in an RPA the following components:

---

[11] The regulations state that the Board "establishes the criteria that counties, cities and towns . . . shall use to determine the extent of the Chesapeake Bay Preservation Areas within their jurisdictions."  9 VAC § 10-20-30(B).

13

1. Tidal wetlands;

2. Nontidal wetlands connected by surface flow and contiguous to tidal wetlands or water bodies with perennial flow;

3. Tidal shores;

4. Such other lands considered by the local government to meet the provisions of subsection A of this section and to be necessary to protect the quality of state waters; and

5. A buffer area not less than 100 feet in width located adjacent to and landward of the components listed in subdivisions 1 through 4 above, and along both sides of any water body with perennial flow.

9 VAC § 10-20-80(B). Subsection C of that section states that "[d]esignation of the components listed in subdivisions 1-4 of subsection B of this section shall not be subject to modification unless based on reliable, site-specific information as provided for in 9 VAC [§] 10-20-105 and subdivision 6 of 9 VAC [§] 10-20-130." And subsection D mandates that "local government[]" determinations of "whether water bodies have perennial flow" must be done according to one of two methods and that "site-specific determinations shall be made or confirmed by the local government pursuant to 9 VAC [§] 10-20-105."

In sum, the Board's criteria mandate that certain lands be included in an RPA and authorize the inclusion of "other lands" that both "meet the provisions of subsection A" and are

14

"necessary to protect the quality of state waters."[12]  After designating lands encompassed by subsections B (1) through (4), the locality must designate a "buffer area not less than 100 feet in width located adjacent to and landward of the components listed" in subsections B (1) through (4) and "along both sides of any water body with perennial flow."  9 VAC § 10-20-80(B)(5).

The foregoing review demonstrates that the General Assembly, acting through the Board, neither expressly nor impliedly granted localities the authority to designate RPAs based on criteria established by the federal government. Instead, the designations must be based on criteria established by the Board.  See Code §§ 10.1-2100(A)(ii) and -2109.  And, the Board's criteria do not include "lands designated as part of the Coastal Barrier Resources System not otherwise listed as a Resource Protection Area Feature."  City Zoning Ordinance § 17.3-62(16)(iv).

The City argues that its inclusion of lands covered by the federal Act in the buffer area is authorized by the "other

---

[12] The City argues that the phrase "[a]t a minimum" in the first sentence of subsection A of 9 VAC § 10-20-80 means that localities are authorized to include additional lands in designating RPAs and are not restricted to those described in subsection A of 9 VAC § 10-20-80.  While the phrase "at a minimum" certainly suggests expansion, the General Assembly's intent that the criteria established by the Board be utilized to designate RPAs, and not alternative, locality-selected criteria, is clear.  Code § 10.1-2109.

lands" component, subdivision (4) of 9 VAC § 10-20-80(B).  This argument is without merit.  First, the Board's regulation treats lands designated under subsection B's "other lands" provision as separate from the buffer area, which is "located adjacent to and landward of the components listed in subdivisions 1 through 4." 9 VAC § 10-20-80(B)(4),(5).  Second, the regulations do not authorize a "variable width buffer area" within a particular locality, but only authorize localities to designate uniform buffer areas of "not less than 100 feet in width."  9 VAC § 10-20-80(B)(5).  The central reason why the City's argument is unavailing, however, is because the Board's criteria do not mention the federal Act or imply that a parcel's inclusion pursuant to the federal Act, as land the development of which the federal government does not want to encourage through "Federal expenditures and financial assistance," has any bearing upon, much less serves as a determinative factor when, designating land as part of an RPA.[13]  16 U.S.C. § 3501(b).

---

[13] The City maintains that designating lands in buffer area on the basis of whether they are included Coastal Barrier Resources System is authorized by 9 VAC § 10-20-110's statement that "[t]he criteria may be employed in conjunction with other planning and zoning concepts to protect the quality of state waters."  We reject this argument.  "The criteria" noted above are found in Part IV of the regulations that govern the "use, development or redevelopment of land in Chesapeake Bay Preservation Areas," 9 VAC § 10-20-120 and § 10-20-130, and the maintenance of "[n]onconforming uses" and other exemptions and exceptions from the requirements of the Act, 9 VAC § 10-20-150. Part III of the regulations, specifically 9 VAC § 10-20-80,

Thus, the City ordinance, which makes inclusion in the Coastal Barrier Resources System a criterion for designating lands part of an RPA, violates the General Assembly's express mandate that a locality "use the criteria developed by the Board to determine the extent of the Chesapeake Bay Preservation Area within [its] jurisdiction[]."[14]  Code § 10.1-2109(A).  See Countryside, 258 Va. at 504-05, 522 S.E.2d at 613-14. Accordingly, the City's 2008 zoning amendments challenged in this appeal are void insofar as they include lands in its RPAs on the basis of the federal Act's applicability.

---

contains the criteria governing the designation of RPAs.

[14] In reaching this conclusion, we do not express any opinion as to the propriety of a locality's looking to or incorporating federal standards when authorized by legislation to do so, and merely reaffirm the principle that even when a locality exercises discretion in the application of regulatory regimes, it is limited to the authority expressly or impliedly granted by the General Assembly.

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court and enter final judgment in favor of Marble Technologies, Inc. and Shri Ganesh, LLC.[15]

<u>Reversed and final judgment.</u>

---

[15] The City argues that an independent ground exists for affirming the circuit court's judgment, i.e., that the plaintiffs did not exhaust their administrative remedies. While the City raised this argument in both its demurrer and motion for summary judgment, the circuit court clearly stated after ruling on the demurrer that the "sole issue" remaining was "whether the City acted ultra vires in passing this amendment to the zoning ordinance." Thus, we find no merit in the City's argument.

In light of our decision, it is not necessary to address the remaining assignments of error.