PRESENT: All the Justices

BRAGG HILL CORPORATION

OPINION BY
v. Record No. 180647                    JUSTICE S. BERNARD GOODWYN
                                        August 15, 2019

CITY OF FREDERICKSBURG, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

In this appeal we consider whether the rezoning of property, by a city ordinance upon annexation of the property by the city, was void ab initio or violated the procedural due process rights of the property owner. We also consider whether the property owner has a vested right to a particular use of its property because of the pre-annexation approval of a master plan by a county planning commission.

## I. BACKGROUND

### A. *Change in Zoning Upon Annexation*

In 1970, Bragg Hill Corporation (Bragg Hill) submitted, to the Spotsylvania County Planning Commission (County Planning Commission) for approval, a master plan (Master Plan) concerning the development of property that Bragg Hill owned in Spotsylvania County (County). The Master Plan showed the proposed development of the Bragg Hill Townhouses project. At the time of the submission of the Master Plan to the County Planning Commission, the County had not yet adopted any zoning ordinance.

The County required the submission of master plans for approval by the County Planning Commission when an owner or developer proposed to develop a large subdivision consisting of multiple sections. Such master plans were a precondition to a preliminary plan, and they were not required to include the detail of a preliminary subdivision plan. Master plans were required to include the layout of the proposed sections, lots, subdivision roads, and, when applicable,

water and sewer plans. In December 1970, the County Planning Commission approved the Master Plan.

On October 18, 1972, Bragg Hill presented a revised master plan (Revised Master Plan). On November 15, 1972, the County Planning Commission approved the Revised Master Plan, which noted a density of eight dwelling units to an acre for the development.

Between December 21, 1970 and December 13, 1972, the County Board of Supervisors approved the final subdivision plats of the first six sections of the Bragg Hill Townhouses project. Bragg Hill diligently pursued development of the first six sections of the project.

On April 12, 1973, the County adopted a zoning ordinance. All of the property in Bragg Hill's Revised Master Plan was zoned R-2. The County's R-2 zoning classification allowed a development density of eight dwelling units per acre.

By the end of the 1970s, Bragg Hill had fully built out and constructed the first six sections of the Bragg Hill Townhouses project. Bragg Hill did not seek the Board of Supervisors' approval to build out Sections 9, 10, and 11 of the Bragg Hill Townhouses project (the Property) because it encountered "difficult prevailing economic conditions."

In the early 1980s, the County and the City of Fredericksburg (City) began negotiations over the City's proposed annexation of County land. After an annexation court approved the annexation, the City annexed 2,963 acres from the County on January 1, 1984. The annexed land included the Property.

Pursuant to Fredericksburg City Code § 18.1-17, which was enacted in 1972, upon annexation on January 1, 1984, all of the annexed land—including the Property—was

automatically zoned into the City's R-1 zoning classification.[1]  This City zoning classification has a permissible housing density of two dwelling units per acre.  The R-1 zoning classification does not permit the by-right development of townhouses.

B. *Partial Rezoning Pursuant to 1991 Ordinance*

On April 23, 1991, Bragg Hill submitted an application to the City to rezone approximately 49 acres of its annexed land, including the Property, from R-1 to R-8.  On July 16, 1991, the City held a public hearing on the application.

Bragg Hill stated that, upon the 1984 annexation, the 49 acres were rezoned from the County's R-2 zoning classification to the City's R-1 zoning classification.  Bragg Hill explained that it wanted a rezoning of its 49 acres of land from the City's R-1 classification to R-8, which was similar to the County's R-2 zone, so that Bragg Hill could develop its property according to the Revised Master Plan, which had been approved by the County Planning Commission.

At the hearing, "[t]here was considerable discussion on the possibility of a 'partial rezoning' versus the requested rezoning of the entire 49[] acres."  Bragg Hill stated it had "no problem" with a partial rezoning, agreeing to develop only part of the 49 acres and "to hold off on the development" of the remainder, which included the Property.

On August 27, 1991, the City adopted ordinance 91-23 (1991 Ordinance), which rezoned only a portion of the 49 acres to an R-4 zoning classification, as a middle ground between the land's current zoning designation as R-1 and Bragg Hill's request for a rezoning to an R-8 zoning classification.  The Property is in the part of Bragg Hill's 49 acres that was not rezoned by the 1991 Ordinance, and the Property continued to have an R-1 zoning classification.

---

[1] At the time of the annexation, Fredericksburg City Code § 18.1-17 stated:  "Any territory hereafter annexed to the City of Fredericksburg shall be in District R-1."

## C. *Vested Rights Adjudication*

On August 21, 2009, Bragg Hill filed a request that the City's zoning administrator determine that Bragg Hill had the vested right to develop the Property according to the Revised Master Plan, despite the Property being zoned R-1 by the City. The zoning administrator determined that Bragg Hill did not have a vested right to develop the Property according to the Revised Master Plan because Bragg Hill did not provide any proof of approval of the Master or Revised Master Plans for the Property by the County Board of Supervisors. The zoning administrator also observed that, even if the plans had been approved by the County Board of Supervisors, their approval expired after five years under Code § 15.2-2260(F), and thus no significant affirmative governmental act, which would be the basis for finding a vested right, remained in effect.

Bragg Hill appealed the zoning administrator's determination to the Board of Zoning Appeals (BZA). The BZA upheld the zoning administrator's decision on September 24, 2010. Bragg Hill did not appeal the BZA's determination.

## D. *Rezoning Pursuant to 2014 Ordinance*

On February 11, 2014, the City passed ordinance 14-06 (2014 Ordinance) pursuant to an "application to rezone approximately 1,121 acres of land from R-1 Residential to R-2, R-12, or R-16 Residential." The 2014 Ordinance noted that all of the subject land was part of the 2,963 acres annexed by the City in 1984, and was initially classified as R-1 "with the intent to rezone the land to a more appropriate zoning district at a later date." It also noted that, while some of the 2,963 acres had already been rezoned, the purpose of the 2014 Ordinance was to "reclassify the remaining land into a zoning district." The 2014 Ordinance stated that the City conducted public hearings in December 2013 and January 2014 before adopting the 2014 Ordinance. As a

result of the passage of the 2014 Ordinance, the Property was rezoned from R-1 to an R-2 zoning classification.[2]

### E. Bragg Hill Sues the City

On October 10, 2017, Bragg Hill filed a three-count declaratory judgment complaint in the Circuit Court of the City of Fredericksburg against the City. Count I seeks a declaration that the City's zoning of the Property, which occurred upon annexation, violated Virginia statutory law and was void ab initio. Bragg Hill asserts that the City's automatic rezoning of the Property violated Virginia law because the City "failed to adopt any ordinance or resolution ratifying the decrease in the dwelling unit density of the Property . . . after a public hearing."

Count II seeks a declaration that Bragg Hill has a vested right to develop the Property according to the Revised Master Plan. Bragg Hill asserts that the County Planning Commission's approval of the Revised Master Plan in 1972 constituted a significant affirmative governmental act, which created a vested right entitling it to develop the Property. Bragg Hill alleges that it relied on this approval by incurring expenses and obligations when it constructed water, sewer, road improvements, and buildings on surrounding parcels, and granted rights-of-way to the County.

Count III seeks a declaration that the change in zoning that occurred upon annexation was void ab initio because it violated Bragg Hill's procedural due process rights provided by Article I, § 11 of the Virginia Constitution and the Fifth and Fourteenth Amendments of the U.S. Constitution. Bragg Hill alleges that the City violated Bragg Hill's procedural due process rights by failing to give notice and hold a public hearing regarding the change in zoning that occurred

---

[2] The R-2 zoning classification permits single-family detached dwellings at a density of two dwelling units per acre. Fredericksburg City Code § 72-31.2.

upon annexation. It contends that the City's automatic rezoning of its Property deprived Bragg Hill of a vested property interest in developing the Property at a density of eight dwelling units per acre, as stated in the Revised Master Plan.

On November 13, 2017, in response, the City filed a plea of the statute of limitations, pleas in bar, and demurrers asserting that Bragg Hill's claims had fully matured, did not involve an actual controversy, and were not appropriate for declaratory judgment.

Regarding its plea of statutes of limitations, the City asserts that Counts I and III were barred because their respective causes of action accrued in 1984. It argued the 30-day appeal period under Code § 15.1-496.1 (1984) barred Count I, and that the two-year limitations period for personal injuries under Code § 8.01-243(A) and the five-year period for property injuries under Code § 8.01-243(B) barred Count III.

The City argued the circuit court lacked jurisdiction over all three counts under Code §§ 15.2-2204(E) and -2285(F) because Bragg Hill failed to contest the change in zoning within 30 days of its occurrence. The City also contended the circuit court lacked subject matter jurisdiction over Counts I and III because they were mooted by the 1991 and 2014 Ordinances that subsequently rezoned the annexed Property owned by Bragg Hill from its original R-1 City zoning classification.

In a special plea concerning the exhaustion of administrative remedies, the City argued that Count II should be dismissed because Bragg Hill failed to exhaust administrative remedies available to it when it declined to appeal the BZA's vested rights determination in 2010. Thus, the adjudication of the vested rights issue was a "thing decided."

Additionally, the City demurred to Count I, asserting that Code § 15.1-491(b) (1984) permitted a municipality to provide zoning classifications for recently annexed land. The City

6

demurred to Counts II and III as inconsistent claims, arguing that Bragg Hill "may not simultaneously possess and have been deprived of its property interest."

### F. Circuit Court Decision

After a hearing, the circuit court granted the City's pleas in bar and demurrers. The circuit court ruled that there was no justiciable controversy between Bragg Hill and the City because the City acted within the authority of Fredericksburg City Code § 18.1-17 and Code § 15.1-491(b) (1984) regarding the rezoning of the Property upon its annexation. The circuit court also noted that Bragg Hill's claims were barred by the applicable statutes of limitations and that the subsequent legislative acts of the City rendered the complaint moot. The circuit court further observed that Bragg Hill failed to appeal the BZA's determination that Bragg Hill had no vested rights regarding the use of its property, and its failure to timely appeal rendered the BZA decision on that issue a final decision which was not subject to collateral attack.

On February 16, 2018, the circuit court entered an order in accordance with its rulings and dismissed the complaint with prejudice.

Bragg Hill appeals. We granted four assignments of error:

1. The trial court erred in sustaining the City's Pleas of Statute of Limitations as Bragg Hill's causes of action seeking to declare the R-1 Zoning void ab initio (Counts I and III) are not subject to any limitations periods, and the City's cited limitations periods are nevertheless inapplicable.

2. The trial court erred in dismissing Count I because: (A) the procedurally defective R-1 Zoning was not rendered valid or authorized by . . . Code § 15.1-491(b); and (B) Count I is not rendered "moot" by the City Council's purported "amendments" in 1991 and 2014.

3. The trial court erred in dismissing Count II as no prior administrative proceedings can supersede or otherwise affect Bragg Hill's right to invoke the trial court's jurisdiction over its vested rights cause of action.

4. The Court erred in dismissing Count III which properly states a claim upon which relief can be granted independent of any vested right and independent of Counts I and II.

7

II.  ANALYSIS

A circuit court's decision to sustain or deny a demurrer is a question of law we review de novo.  *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554 (2003).  "We accept as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts."  *Id.*  Similarly, where a plea in bar presents a question of law and there are no disputed facts relevant to the issue, we review the circuit court's decision to sustain the plea in bar de novo.  *Smith v. McLaughlin*, 289 Va. 241, 251 (2015).

A.  *Legal Validity of the Rezoning Upon Annexation*

Bragg Hill argues that the rezoning that occurred upon the annexation of the Property in 1984 was void ab initio because it was not effected by ordinance, written resolution, a planning commission, or a comprehensive plan.  It also contends that Fredericksburg City Code § 18.1-17 exceeds the authority of its enabling statute, Code § 15.1-491(b) (1984).  It argues that the City's application of Fredericksburg City Code § 18.1-17 violated Code § 15.1-491(b) (1984) as applied to Bragg Hill because the Property was zoned R-1 for over 30 years, and the R-1 zoning was thus not temporary as required by the enabling statute.

Whether a municipality has the power to act is a question of law we review de novo. *Marble Techs., Inc. v. Hampton*, 279 Va. 409, 416 (2010).

"The Dillon Rule of strict construction controls our determination of the powers of local governing bodies."  *Id.* at 417 (citation and internal quotation marks omitted).  Municipalities have only those powers that are (1) expressly granted by the General Assembly, (2) "necessarily or fairly implied" from those express powers, and (3) "essential to the declared objects and purposes" of the municipality.  *Chesapeake v. Gardner Enters.*, 253 Va. 243, 246 (1997); *Stallings v. Wall*, 235 Va. 313, 315–16 (1988) (citation and internal quotation marks omitted).

8

Any act of a municipality that is beyond such powers is invalid. *See Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 454–55 (2007) (holding an amendment to a zoning ordinance as invalid because it was beyond the scope of an enabling statute); *Richmond v. Confrere Club of Richmond, Virginia, Inc.*, 239 Va. 77, 80 (1990) (holding an improper delegation of municipality power as invalid). "If there is a reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." *Board of Supervisors v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995).

"In applying the Dillon Rule, we first examine the plain terms of the legislative enactment to determine whether the General Assembly expressly granted a particular power to the municipal corporation." *Marble Techs.*, 279 Va. at 418. "[W]hen an enabling statute is clear and unambiguous, its intent is determined from the plain meaning of the words used, and, in that event, neither rules of construction nor extrinsic evidence may be employed." *Reed's Landing*, 250 Va. at 400.

A municipal ordinance is invalid under Dillon's Rule if it exceeds the scope of authority granted by statute, or is inconsistent with a statute such that the ordinance and statute cannot coexist. *Gardner Enters.*, 253 Va. at 246; *West Lewinsville Heights Citizens Ass'n v. Board of Supervisors*, 270 Va. 259, 266 (2005). "The fact that a county or municipal ordinance enlarges on a statute's provisions does not create a conflict with the statute unless the statute limits the requirements *for all cases* to its own terms." *West Lewinsville Heights*, 270 Va. at 266 (emphasis added). If an enabling statute and an ordinance can both be given effect, we "harmonize them and apply them together." *Id.*

In the present case, the City relies on Fredericksburg City Code § 18.1-17 and Code § 15.1-491(b) (1984) as authority for the rezoning of the annexed land. At the time of the

9

annexation, Code § 15.1-491(b) (1984) stated that a "zoning ordinance *may include, among other things*, reasonable regulations and provisions":

> For *the temporary application of the ordinance to any property coming into the territorial jurisdiction of the governing body by annexation* or otherwise, subsequent to the adoption of the zoning ordinance, and pending the orderly amendment of the ordinance.

(Emphases added.)[3] Fredericksburg City Code § 18.1-17 stated: "Any territory hereafter annexed to the City of Fredericksburg shall be in District R-1."

Fredericksburg City Code § 18.1-17 did not exceed the authority granted by Code § 15.1-491(b) (1984). That enabling statute allowed a municipality to pass a zoning ordinance that applied to recently annexed land that came into the governing body's jurisdiction. Fredericksburg City Code § 18.1-17 executed that granted authority—it automatically classified recently annexed land as R-1. Given this statutory authority, Fredericksburg City Code § 18.1-17 was valid, not void.

Contrary to Bragg Hill's arguments, the lack of the word "temporary" in Fredericksburg City Code § 18.1-17 does not render it in conflict with, or beyond the authority provided by Code § 15.1-491(b) (1984). Under its plain terms, Code § 15.1-491(b) (1984) did not mandate any "temporary" designation in the zoning ordinance. Nothing in that statute requires the City to give all recently annexed property an expressly temporary zoning classification. Because Code § 15.1-491(b) (1984) does not "limit[] the requirements for all cases to its own terms," there is no statutory conflict with Fredericksburg City Code § 18.1-17. *See West Lewinsville Heights*, 270 Va. at 266.

---

[3] The current version of this statute is now set out in Code § 15.2-2286(A)(2).

We additionally hold that even if Code § 15.1-491(b) (1984) mandated a temporary zoning classification for all recently annexed land, there is no indication that Fredericksburg City Code § 18.1-17 does not comply with that requirement. "Any zoning ordinance may be said to be temporary in the sense that it is always subject to amendment." *Matthews v. Board of Zoning Appeals*, 218 Va. 270, 280 (1977). The zoning classification imposed by Fredericksburg City Code § 18.1-17, like that of any zoning ordinance, is temporary in the sense that the zoning classification imposed can be changed by the orderly amendment of the applicable zoning ordinance. *See West Lewinsville Heights*, 270 Va. at 266 ("[I]f a statute and a local ordinance both can be given effect, courts must harmonize them and apply them together."). In fact, Fredericksburg City Code § 18.1-17 was temporary in application to the extent that the City subsequently amended the zoning of all the annexed property initially zoned pursuant to its provisions. The 1991 Ordinance and the 2014 Ordinance rezoned land that was zoned pursuant to Fredericksburg City Code § 18.1-17. None of the 2,963 acres annexed in 1984 is currently subject to the zoning designation imposed by Fredericksburg City Code § 18.1-17.

Because Fredericksburg City Code § 18.1-17 was within the scope of the City's authority granted by Code § 15.1-491(b) (1984), it does not violate Dillon's Rule and validly authorized the City's zoning of the annexed Property as R-1 upon its annexation. The R-1 zoning classification imposed upon the Property upon its annexation by the City was therefore not void ab initio, and the circuit court did not err in dismissing Count I.[4]

---

[4] Because Count I failed to establish that the rezoning was void ab initio, we do not reach the statute of limitations issues presented in Bragg Hill's first assignment of error.

*B. Finality of Vested Property Right Administrative Adjudication*

Bragg Hill argues that the circuit court erred in dismissing Count II because circuit courts have jurisdiction over a landowner's claim of a vested right to a specific use of his property, and no prior administrative proceedings can in any way affect a circuit court's exercise of that jurisdiction. It contends that the circuit court erred in interpreting this Court's "thing decided" doctrine in granting the City's special plea, which was based on Bragg Hill's alleged failure to exhaust administrative remedies it pursued regarding its purported vested property right. Bragg Hill asserts that it exhausted its administrative remedies by appealing the zoning administrator's decision to the BZA, and that Code § 15.2-2314—which allows the appeal of a BZA decision to a circuit court—is permissive because it states a party "may file" an appeal.

Whether a landowner has acquired a vested right in property is a question of law we review de novo. *Norfolk 102, LLC v. Norfolk*, 285 Va. 340, 352 (2013).

Under certain circumstances, a landowner has the vested property right to continue the existing use of land "even after a change in the applicable zoning classification causes the use to become nonconforming." *Hale v. Board of Zoning Appeals*, 277 Va. 250, 271 (2009). Passed by the General Assembly in 1998, Code § 15.2-2307(A) states that "a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance" when the landowner:

(i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project,

(ii) relies in good faith on the significant affirmative governmental act, and

(iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

1998 Acts ch. 801; *Suffolk v. Board of Zoning Appeals*, 266 Va. 137, 143–44 (2003), *superseded by statute on other grounds*, 2006 Acts ch. 46.

In 1991, we held that a zoning administrator could not make a vested rights determination because an "adjudication regarding the creation, existence, or termination of [a property] right can be made only by a court of competent jurisdiction." *Holland v. Johnson*, 241 Va. 553, 556 (1991). In 1993, however, the General Assembly superseded *Holland* by enacting the predecessor to Code § 15.2-2286(A)(4), which authorizes zoning administrators to adjudicate vested rights determinations. *Board of Supervisors v. Crucible, Inc.*, 278 Va. 152, 158 (2009).

After the General Assembly passed Code § 15.2-2286, *Crucible* addressed whether a landowner "must first seek a vested rights determination from the zoning administrator before seeking such relief from a circuit court." *Id.* at 156. We explained that a "statute prescribing a new remedy for an existing right should never be construed to abolish a pre-existing remedy in the absence of express words or necessary implication." *Id.* at 158 (citation and internal quotation marks omitted). We observed:

> Code § 15.2-2286 did not divest the circuit court of this power; Code § 15.2-2286 does not state that a zoning administrator is required to make a vested rights determination before a party can seek a vested rights determination from a circuit court nor does it make the zoning administrator's authority exclusive.

*Id.*

"When a statute gives a new remedy, and contains no negative, express or implied, of the old remedy, the new one provided by it is cumulative, and the party may elect between the two." *Id.* (citation and internal quotation marks omitted). Thus, a party can "elect between" the zoning administrator and the circuit court, which have concurrent jurisdiction concerning vested rights determinations. *See id.* (citation and internal quotation marks omitted); *cf. Craig v. Hoge*, 95 Va. 275, 279 (1897) (explaining "that between two courts of concurrent jurisdiction, the court which first acquires cognizance of the controversy . . . . is entitled to retain it until the end of litigation . . . and finally dispose of it").

13

> Generally, the plaintiff has the right to select which of the [forums] having concurrent jurisdiction he will bring his action in, and this choice is ordinarily binding on the defendant. However, the plaintiff is also bound by his selection and cannot thereafter bring an action concerning the same subject-matter in a tribunal having concurrent jurisdiction unless a question is involved that cannot be adjudicated by the first [forum].

*Blue v. Mathena*, 259 F. Supp. 926, 928 (S.D. W. Va. 1966) (citing 20 Am. Jur. 2d *Courts*, § 130 (1965)).

Once a landowner has elected to seek an administrative determination, a landowner cannot make a "direct judicial attack on a zoning decision if the landowner has failed to exhaust adequate and available administrative remedies before proceeding with a court challenge." *Lilly v. Caroline Cty.*, 259 Va. 291, 296 (2000) (citation and internal quotation marks omitted). In *Lilly*, for example, we concluded that a landowner's failure to timely appeal a zoning administrator's decision to the BZA under Code § 15.2-2311(A) meant "the administrative remedy has not been exhausted and the zoning administrator's decision becomes a 'thing decided' not subject to court challenge." *Id.*

If a landowner elects to seek a vested rights determination from a zoning administrator and the administrator determines that there is no vested right, the landowner can appeal to the BZA within 30 days of the zoning administrator's decision. Code § 15.2-2311(A). Any landowner aggrieved by the BZA's decision can appeal to the circuit court within 30 days "after the final decision" of the BZA. Code § 15.2-2314.

As allowed by statute, Bragg Hill elected to seek a vested rights determination from a zoning administrator in 2009, rather than from the circuit court. The zoning administrator declined to find that a vested right was created by the Revised Master Plan because the Revised Master Plan was never approved by the County Board of Supervisors. Bragg Hill appealed to the BZA, and the BZA affirmed the zoning administrator. Code § 15.2-2314 allowed Bragg Hill

14

to appeal the BZA's affirmance to the circuit court, if Bragg Hill was aggrieved by the decision of the BZA. Bragg Hill failed to do so. The determination of the zoning administrator affirmed by the BZA thus became a "thing decided." *See Lilly*, 259 Va. at 296.

Bragg Hill failed to exhaust the remedies provided by the General Assembly regarding the administrative determination it sought concerning its putative vested right. The BZA's denial of Bragg Hill's vested right in the Revised Master Plan is therefore a "thing decided," and Bragg Hill cannot collaterally attack that decision. Had Bragg Hill desired a circuit court to determine its vested rights claim, it could have elected to do so by a timely appeal of the BZA's affirmance.

To allow Bragg Hill to independently seek a vested rights determination in circuit court, beyond the 30-day appeal period following the BZA's determination, would render Code § 15.2-2314 meaningless. This would defeat the purpose of the administrative determination authorized by Code § 15.2-2286(A)(4) because any final decision of a zoning administrator, affirmed by the BZA, would be eternally subject to collateral attack in a future circuit court proceeding.

"[W]e presume that every part of a statute has some effect, and [] will not consider any portion meaningless unless absolutely necessary." *Logan v. City Council*, 275 Va. 483, 493 (2008). The purpose of appeal time limitations is

> not to penalize the appellant but to protect the [opponent]. If the required papers are not timely filed . . . the [opponent] is entitled to assume that the litigation is ended, and to act on that assumption.

*Board of Supervisors v. Board of Zoning Appeals*, 271 Va. 336, 345 n.3 (2006) (alterations, citation, and internal quotation marks omitted) (analyzing the 30-day requirement in Code § 15.2-2314).

In 2009, Bragg Hill elected to seek an administrative adjudication of its potential vested right in developing the Property according to the Revised Master Plan. The zoning administrator

15

determined that Bragg Hill did not have a vested right to develop the Property according to the Revised Master Plan, and the BZA affirmed that determination. Bragg Hill failed to appeal the BZA's affirmance of the zoning administrator's denial of a vested right. Its failure to exhaust administrative remedies provided by the General Assembly's statutory scheme, resulted in the zoning administrator's decision affirmed by the BZA becoming final; the City was entitled to assume that the vested rights litigation had ended. The circuit court therefore did not err in granting the special plea regarding exhaustion of administrative remedies and dismissing Count II.

   *C. Constitutionality of the 1984 Rezoning*

   In Count III of its complaint, Bragg Hill argues that minimum procedural due process under the Federal and Virginia constitutions requires notice and hearing, and the City violated that due process right by its failure to hold a public hearing regarding the rezoning of its Property upon its annexation. It also contends that its procedural due process claim "arises independent of any vested right."

   Whether a person has been deprived of due process is a question of law we review de novo. *Norfolk 102*, 285 Va. at 352.

   "The due process clauses of the Fifth and Fourteenth Amendments apply both procedural and substantive constraints upon deprivations of 'liberty' and 'property.'" *Klimko v. Virginia Emp't Comm'n*, 216 Va. 750, 753 (1976); *see also* Va. Const. art. I, § 11 ("That no person shall be deprived of his life, liberty, or property without due process of law."); *Willis v. Mullett*, 263 Va. 653, 657 (2002) (stating that Va. Const. art. I, § 11 is coextensive with the due process guarantees of the U.S. Constitution).

16

Due process analysis involves a two-step inquiry when the government is alleged to have taken property: (1) "whether the interest *is a property interest* protected by procedural due process guarantees," and (2) "whether the procedures prescribed or applied are sufficient to satisfy the due process 'fairness' standard." *Klimko*, 216 Va. at 754 (emphasis added).

The alleged "property interest" at issue for the first inquiry is Bragg Hill's alleged vested right to develop the Property according to the Revised Master Plan. "A vested right in a land use is a property right which is created and protected by law." *Crucible*, 278 Va. at 157 (citation and internal quotation marks omitted). "Vested rights [] protect a landowner's right to develop a specific project under existing zoning conditions and allow continuation of the non-conforming use when that zoning designation is amended or changed." *Board of Supervisors v. Greengael, L.L.C.*, 271 Va. 266, 282 (2006). Thus, vested rights "shall not be affected by a subsequent amendment to a zoning ordinance." Code § 15.2-2307(A).

"A local governing body is *not precluded* from rezoning property because a property owner has established vested rights to use the property in a manner allowed under the former zoning designation but prohibited under the new designation." *Greengael*, 271 Va. at 282 (emphasis added). Landowners only have a vested right in preexisting use of the land, they do not have a vested right "in the continuation of the land's existing zoning status." *Board of Zoning Appeals v. CaseLin Sys., Inc.*, 256 Va. 206, 210 (1998), *superseded on other grounds by statute*, 1998 Acts ch. 801, *as described in Suffolk*, 266 Va. at 143.

Count III fails to state a procedural due process violation for two reasons. First, according to the BZA and zoning administrator, Bragg Hill does not have a vested property right in the development of the Property pursuant to the Revised Master Plan such as to warrant procedural due process protection. As stated above, the zoning administrator's finding that

17

Bragg Hill had no vested right in the Revised Master Plan is a "thing decided" and final. Bragg Hill thus pled that the City deprived it of a vested property right that Bragg Hill does not have. The City was not required to provide procedural due process protections to Bragg Hill for a property interest that does not exist.

Second, Bragg Hill has no vested right "in the continuation" of the Property's zoning status before annexation. *See CaseLin Sys.*, 256 Va. at 210. Even if Bragg Hill had a vested right to develop the Property according to the Revised Master Plan, the change of the Property's zoning upon it being annexed did not deprive it of that vested right. Vested rights are not affected by a subsequent change in zoning status. Code § 15.2-2307. If Bragg Hill had a vested right in the Revised Master Plan pre-annexation, that vested right continued after the annexation and rezoning. Thus, the change in zoning could not have deprived Bragg Hill of its alleged vested property interest.

Because the City did not deprive Bragg Hill of a vested property interest when it rezoned Bragg Hill's Property upon its annexation, the City did not violate any of Bragg Hill's procedural due process rights. The circuit court therefore did not err in granting the demurrer and dismissing Count III.

### III. CONCLUSION

The circuit court did not err in dismissing Bragg Hill's claims. The change in the zoning of the Property upon its annexation was not void ab initio as it was authorized by the City's zoning ordinance and the Code of Virginia. The issue of whether Bragg Hill had a vested right was decided against Bragg Hill in 2009 by the zoning administrator and affirmed by the BZA. That administrative ruling against Bragg Hill is final because it was not timely appealed to the circuit court. Bragg Hill was not deprived of any property interest as a result of the rezoning

18

which occurred upon the annexation of its property, and Bragg Hill's procedural due process rights were not violated. Accordingly, we affirm the judgment of the Circuit Court of the City of Fredericksburg.

*Affirmed*.