PRESENT:  All the Justices

KENT SINCLAIR

<table>
<tr><td></td><td>OPINION BY</td></tr>
<tr><td>v.   Record No. 101831</td><td>JUSTICE WILLIAM C. MIMS<br>January 13, 2012*</td></tr>
</table>

NEW CINGULAR WIRELESS PCS,
LLC, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
H. Thomas Padrick, Jr., Judge Designate

In this appeal, we consider whether an Albemarle County

zoning ordinance governing construction on slopes within the

county conflicts with statutory law or exceeds the powers

delegated to the county by the General Assembly, in violation of

the Dillon Rule.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Kent Sinclair and Joan C. Elledge own adjacent residential

parcels in Albemarle County.  New Cingular Wireless PCS, LLC

("New Cingular") contracted with Elledge to install a 103-foot

cellular transmission tower on her parcel.  The steep topography

of the parcel brings it within the scope of Albemarle County Code

§ 18-4.2 ("the Ordinance"), which restricts construction on land

with slopes of 25 percent or more ("a Critical Slope").  The

Ordinance includes subsection § 18-4.2.5(a) ("the Waiver

Provision"), which sets forth the following detailed procedure

for modifying or waiving the requirements of the Ordinance by an

application to the planning commission:

_____

* As amended by order of the Court dated March 30, 2012.

1

1. Request. A developer or subdivider requesting a modification or waiver shall file a written request in accordance with section 32.3.10(d) of this chapter and identify and state how the request would satisfy one or more of the findings set forth in subsection 4.2.5(a)(3). If the request pertains to a modification or waiver of the prohibition of disturbing slopes of twenty-five (25) percent or greater (hereinafter, "critical slopes"), the request also shall state the reason for the modification or waiver, explaining how the modification or waiver, if granted, would address the rapid and/or large-scale movement of soil and rock, excessive stormwater run-off, siltation of natural and man-made bodies of water, loss of aesthetic resources, and, in the event of septic system failure, a greater travel distance of septic effluent (collectively referred to as the "public health, safety, and welfare factors") that might otherwise result from the disturbance of critical slopes.

2. Consideration of recommendation; determination by county engineer. In reviewing a request for a modification or waiver, the commission shall consider the recommendation of the agent as to whether any of the findings set forth in subsection 4.2.5(a)(3) can be made by the commission. If the request pertains to a modification or waiver of the prohibition of disturbing critical slopes, the commission shall consider the determination by the county engineer as to whether the developer or subdivider will address each of the public health, safety and welfare factors so that the disturbance of critical slopes will not pose a threat to the public drinking water supplies and flood plain areas, and that soil erosion, sedimentation, water pollution and septic disposal issues will be mitigated to the satisfaction of the county engineer. The county engineer shall evaluate the potential for soil erosion, sedimentation and water pollution that might result from the disturbance of slopes of twenty-five (25) percent or greater in accordance with the current provisions of the Virginia Department of Transportation Drainage Manual, the Commonwealth

of Virginia Erosion and Sediment Control Handbook and Virginia State Water Control Board best management practices, and where applicable, Chapter 17, Water Protection, of the Code.

3. Findings. The commission may grant a modification or waiver if it finds that the modification or waiver would not be detrimental to the public health, safety or welfare, to the orderly development of the area, or to adjacent properties; would not be contrary to sound engineering practices; and at least one of the following:

    a. Strict application of the requirements of section 4.2 would not forward the purposes of this chapter or otherwise serve the public health, safety or welfare;

    b. Alternatives proposed by the developer or subdivider would satisfy the intent and purposes of section 4.2 to at least an equivalent degree;

    c. Due to the property's unusual size, topography, shape, location or other unusual conditions, excluding the proprietary interest of the developer or subdivider, prohibiting the disturbance of critical slopes would effectively prohibit or unreasonably restrict the use of the property or would result in significant degradation of the property or adjacent properties; or

    d. Granting the modification or waiver would serve a public purpose of greater import than would be served by strict application of the regulations sought to be modified or waived.

4. Conditions. In granting a modification or waiver, the commission may impose conditions deemed necessary to protect the public health, safety or welfare and to insure that the development will be consistent with the intent and purposes of section 4.2.

5. Appeal. The board of supervisors shall consider a modification or waiver as follows:

    a. The denial by the commission of a modification or waiver, or the approval of a modification or waiver by the commission with conditions objectionable to the

developer or subdivider, may be appealed to the board of supervisors as an appeal of a denial of the plat, as provided in section 14-226 of the Code, or the site plan, as provided in section 32.4.2.7 or 32.4.3.9, to which the modification or waiver pertains. A modification or waiver considered by the commission in conjunction with an application for a special use permit shall be subject to review by the board of supervisors.

b. In considering a modification or waiver, the board may grant or deny the modification or waiver based upon the findings set forth in subsection 4.2.5(a)(3), amend any condition imposed by the commission, and impose any conditions it deems necessary for the reasons set forth in subsection 4.2.5(a)(4).

Albemarle County Code § 18-4.2.5(a).[1]

Thus, under the Waiver Provision the planning commission is authorized to grant a waiver from the restrictions otherwise imposed by the Ordinance after making certain findings or imposing conditions it deems necessary to protect the public health, safety, or welfare and to ensure compliance with the intent and purpose of the Ordinance. An appeal from the decision of the planning commission lies to the board of supervisors only if the waiver is granted subject to conditions objectionable to

---

[1] Albemarle County Code § 18-4.2.5(b) provides for an "administrative waiver" when the Critical Slope triggering application of the Ordinance was created during development of the property in accordance with a site plan approved by the county or to replace an existing structure located on a Critical Slope when the footprint of the new structure does not exceed the footprint of the structure it replaces. The "administrative

4

the applicant or is denied.  The Ordinance makes no provision for appeals by third parties, such as owners of adjoining parcels who believe themselves to be aggrieved by a decision of the planning commission to grant a waiver.

Elledge and New Cingular filed an application for a waiver as provided by the Waiver Provision.  Sinclair opposed the application throughout the administrative staff review process and two public hearings.  Nevertheless, the planning commission approved the application in February 2010.

Sinclair then filed a complaint in the circuit court seeking a declaratory judgment that (1) the Waiver Provision is invalid because it conflicts with the statutory scheme governing planning and zoning set forth in Title 15.2 of the Code of Virginia and (2) the county exceeded the power delegated to it by the General Assembly in violation of the Dillon Rule because its procedure for considering waiver applications is not authorized by state law.[2]  In particular, he asserted that the only departures from a zoning ordinance permitted by state law are variances, defined by Code § 15.2-2201, and zoning modifications, provided for in Code § 15.2-2286(A)(4).  Under Code § 15.2-2312, a variance may only

_____

waiver" provision is not relevant in this case and is not before us in this appeal.
[2] The Complaint named as defendants Elledge and New Cingular, Albemarle County and its board of supervisors and planning commission, and the director of the Albemarle County

be approved by the board of zoning appeals and only upon a finding that criteria set forth in Code § 15.2-2309(2) have been met.[3] Under Code § 15.2-2286(A)(4), zoning modifications may only be granted by the zoning administrator and only upon a finding that identical criteria have been met. Thus, whether the waiver is a variance or a zoning modification, the Waiver Provision irreconcilably conflicts with state law because it permits waivers to be granted by the planning commission, rather than the board of zoning appeals or zoning administrator, and without a finding that the criteria in Code § 15.2-2309(2) have been met.

Sinclair also asserted that the Waiver Provision unlawfully circumvented his right to judicial review. Under Code § 15.2-2311(A), any person aggrieved by an adverse decision of the zoning administrator concerning the grant or denial of a zoning modification may appeal to the board of zoning appeals. Under Code § 15.2-2314, any person aggrieved by the decision of the board of zoning appeals, whether on an appeal from a decision of

_____

Department of Community Development in his official capacity. We refer to these parties collectively as "the Defendants."

[3] Code § 15.2-2309(2) permits a board of zoning appeals to grant a variance only if it finds that "the strict application of the ordinance would produce undue hardship relating to the property," "the hardship is not shared generally by other properties in the same zoning district and the same vicinity," and "the authorization of the variance will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance."

6

the zoning administrator concerning a zoning modification or from the board's grant or denial of a variance, may petition the circuit court for a writ of certiorari to review the board's decision. Because the Waiver Provision provided no right of appeal to aggrieved parties and particularly no judicial review in the circuit court, it again conflicted with state law.[4]

Sinclair and the Defendants filed competing motions for summary judgment. After a hearing, the circuit court determined that the waivers allowed by the Waiver Provision are not variances within the meaning of Code § 15.2-2201. Therefore, Code § 15.2-2312 did not reserve consideration of waiver applications to the board of zoning appeals and the criteria to be considered in granting or denying variances imposed by Code § 15.2-2309(2) did not apply. The court also ruled that the Ordinance's delegation to the planning commission of the decision to grant or deny waiver applications was within the broad grant of powers delegated to the county under Code §§ 15.2-2280 and 15.2-2286. Accordingly, it held the Waiver Provision did not conflict with state law and the county acted pursuant to power delegated to it by the General Assembly. The court therefore

---

[4] Sinclair also claimed that the planning commission erred in applying the Waiver Provision to Elledge and New Cingular's application because it provides for waivers only upon application by a "subdivider" or "developer," and neither Elledge nor New Cingular fell within the Ordinance's definition of either term. This claim was nonsuited and is not before us on appeal.

7

granted the Defendants' motion for summary judgment.  We awarded Sinclair this appeal.

## II. ANALYSIS

The circuit court's interpretation of the Ordinance and state law presents a legal question, which we review de novo. Jones v. Williams, 280 Va. 635, 638, 701 S.E.2d 405, 406 (2010).

### A.  THE DILLON RULE

Localities have "no element of sovereignty" and are agencies created by the Commonwealth.  Marble Techs., Inc. v. City of Hampton, 279 Va. 409, 417, 690 S.E.2d 84, 88 (2010) (quoting Whiting v. Town of West Point, 88 Va. 905, 906, 14 S.E. 698, 699 (1892)) (internal quotation marks omitted).  Accordingly, when a statute enacted by the General Assembly conflicts with an ordinance enacted by a local governing body, the statute must prevail.  Covel v. Town of Vienna, 280 Va. 151, 162, 694 S.E.2d 609, 616 (2010).

Moreover, local governing bodies "have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable."  Marble Techs., Inc., 279 Va. at 417, 690 S.E.2d at 88 (quoting Board of Zoning Appeals v. Board of Supervisors, 276 Va. 550, 553-54, 666 S.E.2d 315, 317 (2008) (internal quotation marks omitted)).  This principle, known as the Dillon Rule, is a rule of strict construction:  "[i]f there is a

8

reasonable doubt whether legislative power exists, the doubt must be resolved against the local governing body." Board of Supervisors v. Reed's Landing Corp., 250 Va. 397, 400, 463 S.E.2d 668, 670 (1995). In considering whether a local governing body had authority to enact an ordinance, there is no presumption that it is valid; if no delegation from the legislature can be found to authorize its enactment, it is void. Marble Techs., Inc., 279 Va. at 416-17, 690 S.E.2d at 88. While the "reasonable selection of method" rule may apply to determine whether a local governing body has employed a proper method for exercising a power delegated to it, the rule is irrelevant when considering whether the General Assembly has delegated local governing bodies a power to exercise at all. Id. at 417 n.10, 690 S.E.2d at 88 n.10.

### B. CRITICAL SLOPE WAIVERS ARE NEITHER VARIANCES NOR ZONING MODIFICATIONS

Sinclair first asserts that the Waiver Provision is void because the Ordinance prohibits construction on Critical Slopes. Because a landowner may not lawfully erect a structure on a parcel with a Critical Slope without obtaining a waiver, he argues, a waiver is in reality a variance or zoning modification and the criteria set forth in Code §§ 15.2-2309(2) and 15.2-2286(A)(4) must be met. We disagree.

A variance "allows a property owner to do what is otherwise not allowed under the ordinance." Bell v. City Council, 224 Va.

9

490, 496, 297 S.E.2d 810, 813-14 (1982). But where "the property may be developed in a way consistent with the ordinance, but only with approval of the [locality] after specified conditions are met," a variance is not necessary. Id. at 496, 297 S.E.2d at 814. Here, the Ordinance allows construction, provided that the landowner applies for the county's prior approval. The application process allows the county to review the proposed construction to ensure it will not precipitate the adverse effects it enacted the Ordinance to avoid, or to impose any conditions it determines to be necessary to ameliorate such adverse effects.[5] If the proposed construction does not precipitate such effects or if conditions may be imposed to ameliorate them, the construction will be allowed.

In Bell, we determined that when proposed construction is permitted by ordinance, subject to prior application to and approval by the local government, the approval was not a variance but a special exception. 224 Va. at 496, 297 S.E.2d at 814. The General Assembly has delegated to localities the authority to provide for "the granting of special exceptions under suitable regulations and safeguards" in a zoning ordinance. Code § 15.2-

_____

[5] Such adverse effects, referred to in the Waiver Provision as "the "public health, safety, and welfare factors," include "the rapid and/or large-scale movement of soil and rock, excessive stormwater run-off, siltation of natural and man-made bodies of water, loss of aesthetic resources, and, in the event

2286(A)(3). Moreover, Code § 15.2-2288.1 expressly permits the use of the special exception procedure for steep slope development.

Unlike variances, special exceptions are not required to be reviewed for compliance with the criteria set forth in Code §§ 15.2-2309(2) and 15.2-2286(A)(4). Accordingly, we reject Sinclair's argument that the Waiver Provision conflicts with state law because it does not require consideration of those criteria before a waiver application is approved.[6]

### C. CONSIDERATION OF CRITICAL SLOPE WAIVERS IS LEGISLATIVE, NOT MINISTERIAL OR ADMINISTRATIVE

Sinclair next asserts that the procedure for reviewing waiver applications created by the Waiver Provision is not authorized by state law and therefore conflicts with the Dillon Rule. We agree.

---

of septic system failure, a greater travel distance of septic effluent." Albemarle County Code § 18-4.2.5(a)(1).

[6] Our holding on this issue is limited to addressing Sinclair's argument that a waiver granted under the Waiver Provision may only be either a variance or a zoning modification and that the mandatory criteria set forth by the General Assembly in Code §§ 15.2-2309(2) and 15.2-2286(A)(4) therefore must be considered before such a waiver is granted. We hold today that such a waiver need not be either a variance or a zoning modification and that the Code §§ 15.2-2309(2) and 15.2-2286(A)(4) criteria therefore need not be included in the consideration of such a waiver. We do not decide today that such a waiver is not a departure from the zoning ordinance because variances and zoning modifications are not the only form of departures. See, e.g., Code § 15.2-2201 (providing for special exceptions). However, that does not end our inquiry because

11

As previously noted, the Waiver Provision purports to confer upon the planning commission the authority to grant or deny a waiver application or impose conditions in its sole discretion and with no right of appeal or judicial review for aggrieved third parties.  The Defendants argue that such power is only ministerial or administrative and that local governing bodies may delegate its exercise to planning commissions under the general authority conferred by Code §§ 15.2-2280, 15.2-2284, and 15.2-2286(a)(4).  We disagree.

We have held that local governing bodies may delegate administrative or ministerial acts without statutory authorization.  Ours Props., Inc. v. Ley, 198 Va. 848, 850-52, 96 S.E.2d 754, 756-58 (1957).  In Ours Properties, the issue was whether a building inspector had the authority to grant or refuse an application for a permit to build an asphalt plant in an area zoned for light industrial uses.  The underlying ordinance of the City of Falls Church allowed permits to be granted only when, among other things, "satisfactory evidence is presented that such establishment will not adversely affect any contiguous district through the dissemination of smoke, fumes, dust, odor, or noise or by reason of vibration and that such establishment will not

Sinclair further argues that the planning commission lacks the authority to grant such a waiver.

12

result in any unusual danger of fire or explosion."  Id. at 849,

96 S.E.2d at 755 (emphasis omitted).

In upholding the city council's delegation to the building

inspector to determine whether an applicant for a building permit

had met his burden under the ordinance, we noted that a local

governing body

> must work through some instrumentality or agency
> to perform its duties, since it does not sit
> continuously.  Under the changing circumstances
> and conditions of life, it is frequently
> necessary that power be delegated to an agent to
> determine some fact or state of things upon which
> the legislative body may make laws operative.
> Otherwise, the wheels of government would cease
> to operate.  Of course, the discretion and
> standards prescribed for guidance must be as
> reasonably precise as the subject matter requires
> or permits.
>     [I]t is necessary that the determination of
> such facts must be left to the honest judgment of
> some designated official or board. In Virginia,
> we have repeatedly held that an administrative
> officer or bureau may be invested with the power
> to ascertain and determine whether the
> qualifications, facts or conditions comprehended
> in and required by the general terms of a law,
> exist in the performance of their duties, and
> especially when the performance of their duties
> is necessary for the safety and welfare of the
> public.

Id. at 851, 96 S.E.2d at 757.

However, Ours Properties is distinguishable from this case

on three grounds.  First, in that case, the building permit

ordinance restricted the building inspector to considering

factors that we determined "have a well understood meaning, and

13

are intended to protect the public welfare, and to furnish a pattern of conduct to guide a conscientious official in the performance of his duties under the ordinance." Id. at 853, 96 S.E.2d at 758. In this case, we are unable to determine that the so-called "public health, safety and welfare factors," which include "loss of aesthetic resources," Albemarle County Code § 18-4.2.5(a)(1), either "have a well understood meaning," "are intended to protect the public welfare," or "furnish a pattern of conduct to guide a conscientious official in the performance of his duties under the ordinance."

Second, in Ours Properties, we observed that the building permit ordinance satisfied the requirements of due process because "review in the courts[] is accorded any aggrieved party." 198 Va. at 853, 96 S.E.2d at 758 (emphasis added). Decisions to grant or deny a departure from a zoning ordinance necessarily implicate important property rights, not solely for the landowner applying for such a departure but also for other parties who may be adversely affected by a ruling. Accordingly, the decision of the zoning administrator to grant or deny a zoning modification may be appealed to the board of zoning appeals by any aggrieved party. Code § 15.2-2311(A). Similarly, the decision of the board of zoning appeals – whether a decision to grant or deny a variance or special exception or an appeal from a zoning administrator's decision to grant or deny a zoning modification –

14

may be appealed to the circuit court by any aggrieved party. Code § 15.2-2314.  Yet in this case, aggrieved third parties have no right of appeal under the Waiver Provision at all.

Finally, in Ours Properties, we observed that "[t]he provisions of the ordinance here in question merely delegate power authorizing the building inspector to ascertain facts to which the legislation is directed, and to put into effect the features controlled by the ascertained facts."  198 Va. at 852, 96 S.E.2d at 757-58.  Unlike the ordinance for the issuance of building permits in Ours Properties, the Waiver Provision does not empower the planning commission merely to evaluate whether proposed construction on a Critical Slope would precipitate one or more of the adverse effects identified as the so-called "public health, safety, and welfare factors" in Albemarle County Code § 18-4.2.5(a)(1) and grant or reject a waiver application based on that factual determination.  Rather, the Waiver Provision purports to allow the planning commission to impose conditions to ameliorate such effects.  Albemarle County Code § 18-4.2.5(a)(4).

We considered a similar procedural structure in Fairfax County Board of Supervisors v. Southland Corp., 224 Va. 514, 297 S.E.2d 718 (1982), with respect to special exceptions.  We noted that a key difference between a variance and a special exception is that a variance authorizes a use otherwise prohibited by the

15

ordinance while the use permitted by a special exception is permitted under the ordinance, subject to prior application to and approval by the local government. Id. at 522 & n.2, 297 S.E.2d at 722 & n.2 (citing Bell, 224 Va. at 496, 297 S.E.2d at 813-14).[7] However, we also observed that such approval "is to be granted subject to such limitations and conditions as public officials may impose in order to reduce the impact of the use upon neighboring properties and the public to the level which would be caused by those uses permitted as a matter of right." Id. at 522, 297 S.E.2d at 722.

While we do not decide today that a waiver under the Waiver Provision is a special exception, the approval mechanisms are functionally analogous. Like the special exception process we considered in Southland Corp., the Waiver Provision permits construction on Critical Slopes but requires prior application and approval, which may be contingent upon limitations and conditions imposed by the approving authority. The determination that conditions are necessary to mitigate or avoid the adverse effects identified in the Waiver Provision necessarily includes a determination of which conditions will effectively avoid or mitigate those effects. The latter determination is not merely

---

[7] And as discussed above, this difference is critical to our determination that the factors required by Code § 15.2-2309(2) need not be considered in evaluating a critical slope waiver application.

16

administrative or ministerial: it is legislative.  See id. at 522, 297 S.E.2d at 722 ("Whether a legislative body has reserved unto itself the power to grant or deny special exceptions or use permits . . . we have consistently held the exercise of that power to be a legislative, rather than an administrative act.")

### D.  CONSIDERATION OF CRITICAL SLOPE WAIVERS MAY NOT BE DELEGATED TO PLANNING COMMISSIONS

Our ruling that consideration of an application under the Waiver Provision is legislative rather than administrative or ministerial does not end our inquiry because "local governing bodies may delegate the exercise of these legislative functions to subordinate bodies, officers, or employees."  Helmick v. Town of Warrenton, 254 Va. 225, 229, 492 S.E.2d 113, 115 (1997).  However, they may do so only "[i]f allowed by statute."  Id. (emphasis added).

Those to whom local governing bodies are authorized to delegate approval of departures from zoning ordinances are clearly set out in state law.  Local governing bodies are expressly authorized to delegate approval of zoning modifications to a zoning administrator.  Code § 15.2-2286(A)(4) ("Where provided by ordinance, the zoning administrator may be authorized to grant a modification from any provision contained in the zoning ordinance . . . .").  Likewise, they are expressly authorized to delegate approval of special exceptions to the

17

board of zoning appeals.  Compare Code § 15.2-2310 (applications for special exceptions "shall be transmitted promptly to the secretary of the board who shall place the matter on the docket to be acted upon by the board") with Code § 15.2-2286(A)(3) ("the governing body of any locality may reserve unto itself the right to issue such special exceptions").  Variances are to be considered by the board of zoning appeals.  Code §§ 15.2-2309(2) and 15.2-2310.

But the General Assembly has not allowed local governing bodies to delegate legislative decisions to planning commissions.[8]  To the contrary, delegation of such authority to the planning commission is inconsistent with the general role of planning commissions, as reflected by their enabling statutes.

The General Assembly requires every locality to "create a local planning commission in order to promote the orderly

---

[8] Even if the decision required to be made under the Waiver Provision were merely ministerial or administrative and therefore suitable for delegation without express statutory authority, the decision to grant or deny a critical slope waiver application cannot be delegated to a planning commission because such decisions are incompatible with the nature of planning commissions, whose powers, as discussed below, are strictly enumerated by the General Assembly.  We do not address whether an ordinance allowing planning commissions to consider and recommend a disposition of a critical slope waiver would be consistent with the role contemplated for them by General Assembly as evidenced by their existing statutory empowerments.  Cf. Ours Props., 198 Va. at 849-50, 96 S.E.2d at 755-56 (noting the building permit ordinance allowed the planning commission to recommend that the building inspector grant or deny a permit, and that the planning commission had recommended denial).

development of the locality and its environs." Code § 15.2-2210. While the General Assembly describes planning commissions as "primarily" advisory bodies, id., it has declined to grant them executive, legislative, or judicial powers.[9]

For example, planning commissions are charged with preparing comprehensive plans to recommend to the local governing body. Code § 15.2-2223. To accomplish this task, they are authorized to survey and study development and growth trends, id.; to request reasonable information from any state entity responsible for any public facility within the locality, Code § 15.2-2202(B); to request reasonable information from any electrical utility responsible for transmission lines of 150 kilovolts or more, Code § 15.2-2202(E); to meet with the Department of Transportation about any state highway affected by the plan, Code § 15.2-2222.1; to study public facilities necessary to implement the plan, and any associated costs or revenues, Code § 15.2-2230.1; to post the proposed plan on a website and hold public hearings, Code § 15.2-2225; and to review the plan every five years to determine

---

[9] Even their necessary incidental powers are specifically set forth in statute. See, e.g., Code § 15.2-2214 (power to fix the time for regular meetings); Code § 15.2-2214 (power to call special meetings); Code § 15.2-2217 (power to elect a chairman and vice-chairman, and appoint any other officers, employees, or staff authorized by the local governing body); Code § 15.2-2222 (power to spend funds allocated by the local governing body); Code § 15.2-2211 (power to adopt rules and appoint committees).

whether it should be amended by the local governing body, Code § 15.2-2230.

Similarly, planning commissions may also prepare an official map and make any surveys necessary for such purpose, Code § 15.2-2233, and recommend the ensuing map for approval by the local governing body, Code § 15.2-2234.

Planning commissions may consult with the local governing body about the creation of an agricultural and forestal district, Code § 15.2-4305; recommend termination, modification, or continuation of an existing district, Code § 15.2-4311; make recommendations about proposals to build on or acquire land within a district, Code § 15.2-4313, or to withdraw land from an agricultural and forestal district, Code § 15.2-4314.

Planning commissions may prepare and recommend a subdivision ordinance for approval by the local governing body, Code § 15.2-2251, and recommend amendments to the subdivision ordinance, Code § 15.2-2253. They also may prepare and recommend a zoning ordinance for adoption by the local governing body, Code § 15.2-2285, or recommend that the local governing body amend the zoning ordinance, Code § 15.2-2286(7).

But after reviewing the seventy sections in which the term "planning commission" appears in Title 15.2 of the Code, we have not identified a single provision of state law authorizing planning commissions to consider and rule upon departures from a

20

zoning ordinance.  The Defendants nevertheless argue that Code §§ 15.2-2280 and 15.2-2286 provide broad authority to localities for the administration and enforcement of zoning ordinances.  They assert that the county's delegation to the planning commission is consistent with this broad authority.  We disagree.

When the General Assembly has allowed local governing bodies to delegate additional powers to planning commissions, it has done so in express terms.  For example, it has permitted local governing bodies to authorize them to receive funds or approve bonds or letters of credit relative to the dedication of public rights of way, Code § 15.2-2241(A); to assess whether a transfer of development rights complies with the locality's transfer of development rights ordinance, Code §15.2-2316.2; and to serve as a road impact fee advisory committee, Code § 15.2-2319.  Likewise, it has permitted local governing bodies to delegate to planning commissions the enforcement and administration of subdivision regulations, Code § 15.2-2255, and to consider subdivision plats and preliminary subdivision plats submitted for approval, Code §§ 15.2-2259 and 15.2-2260.  It has not, however, authorized local governing bodies to delegate to planning commissions approval of departures from zoning ordinances or any other powers to administer or enforce an existing zoning

21

ordinance.[10]  Compare Code § 15.2-2255 (empowering local

governing bodies to administer and enforce subdivision ordinances

and expressly including planning commissions) with Code § 15.2-

2286(A)(4) (empowering local governing bodies to administer and

enforce zoning ordinances with no mention of planning commissions

at all).

### III.  CONCLUSION

For the foregoing reasons we hold that the Waiver

Provision's delegation of power to grant waiver applications to

the planning commission is legislative in nature, and such a

delegation is not authorized by state law.  Accordingly, in

enacting the Waiver Provision, the county exceeded its authority

from the General Assembly in violation of the Dillon Rule and the

Waiver Provision is void.  We therefore will affirm the circuit

court's judgment that waivers are not variances within the

meaning of Code § 15.2-2201, reverse its judgment that the

decision to grant or deny waiver applications may be delegated to

---

[10] A planning commission's power to prepare and recommend a zoning ordinance for approval by the local governing body, Code § 15.2-2285, does not include power to administer and enforce such ordinances.  While other states may have adopted different zoning schemes, "[t]he public policy of the Commonwealth is determined by the General Assembly." Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010).  In Virginia, the General Assembly has decided that unless it provides otherwise by statute, planning commissions are advisory, not decision-making, bodies.

the planning commission, and remand for further proceedings

consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.

JUSTICE McCLANAHAN, with whom JUSTICE POWELL joins, concurring in part and dissenting in part.

I would affirm the judgment of the circuit court in its entirety.

In ruling that the Waiver Provision delegates legislative zoning power to the planning commission, the majority adopts a theory that was not advanced by Sinclair in his complaint. Therefore, my analysis is framed in accordance with the claims that are set forth by Sinclair in counts I and II of his complaint and were ruled upon by the circuit court in granting the defendants' motions for summary judgment.

## I. COUNT I OF SINCLAIR'S COMPLAINT

In count I, Sinclair asserts the Waiver Provision is void because it is in direct conflict with the Code provisions governing zoning variances and zoning modifications. Count I consists of 38 paragraphs and Sinclair summarizes these paragraphs and his claim in count I as follows.

> [The Waiver Provision] unlawfully violates state
> statutorily prescribed standards by which a locality
> may grant zoning modifications to an applicant to allow
> deviation from the restrictions of a zoning ordinance

(¶¶'s 30-71 below).  It also unlawfully deprives affected objecting adjacent property owners of administrative appeal rights and further deprives them of access to Circuit Court judicial remedies – which are both required by state statute when a modification of zoning restrictions is granted to an applicant over objections (¶¶'s 72-78 below).

In upholding the circuit court's judgment granting summary judgment on count I of Sinclair's complaint, the majority concludes the Waiver Provision is not a mechanism for a zoning variance as defined by Code § 15.2-2201[1] nor a zoning modification as provided for in Code § 15.2-2286(A)(4)[2] since the Albemarle County Code zoning ordinance expressly allows disturbance of critical slopes upon compliance with the conditions promulgated by the board of supervisors.

I agree the Waiver Provision is not a zoning variance or modification since it is not a deviation from the zoning ordinance but an integrated part of the ordinance.  Because the Waiver

---

[1] Variance "in the application of a zoning ordinance" is defined as

a reasonable deviation from those provisions regulating the size or area of a lot or parcel of land, or the size, area, bulk or location of a building or structure when the strict application of the ordinance would result in unnecessary or unreasonable hardship to the property owner, and such need for a variance would not be shared generally by other properties, and provided such variance is not contrary to the intended spirit and purpose of the ordinance, and would result in substantial justice being done.

Code § 15.2-2201.

[2] Like a variance, a modification may be granted by zoning administrators upon satisfaction of certain criteria when "strict

24

Provision is not a zoning variance or zoning modification as asserted by Sinclair in count I, the Waiver Provision does not "violate[] state statutorily prescribed standards by which a locality may grant zoning modifications . . . to allow deviation from the restrictions of a zoning ordinance." Furthermore, the Waiver Provision does not deprive objecting property owners of "administrative appeal rights" and "access to Circuit Court judicial remedies" that are "required by statute when a modification of zoning restrictions is granted." Therefore, I concur in the majority's holding that the circuit court did not err in granting the defendants' motions for summary judgment on count I of Sinclair's complaint.[3]

## II. COUNT II OF SINCLAIR'S COMPLAINT

In count II, Sinclair asserts that by permitting the planning commission, rather than the zoning administrator or board of

---

application of the ordinance would produce undue hardship." Code § 15.2-2286(A)(4).

[3] I disagree, however, with the majority's comparison of the Waiver Provision to a special exception. A special exception, also referred to as a special use, is "a use not permitted in a particular district except by a special use permit granted under the provisions of this chapter and any zoning ordinances adopted herewith." Code § 15.2-2201. The Waiver Provision does not permit a specific use that is otherwise not permitted in a particular district but applies to disturbance of critical slopes regardless of the specific use approved in a particular zoning district. In fact, the cellular transmission tower objected to by Sinclair is a use permitted by right under the zoning ordinance. Albemarle County Code § 18-10.2.1(22). The Waiver Provision is not a mechanism to permit this use because it is already permitted by right.

zoning appeals, to grant "zoning modifications" without complying with the standards prescribed by the Code, the Waiver Provision is void as being in violation of the Dillon Rule. Count II consists of 41 paragraphs and is summarized by Sinclair in his complaint as follows.

> [The Waiver Provision] violates Dillon's Rule by unlawfully purporting to give the Planning Commission power to grant such zoning modifications without complying with the standards that the Code of Virginia expressly requires for such zoning modifications, all utterly without the required statutory authority. [The Waiver Provision] further violates Dillon's Rule by usurping for the Planning Commission powers expressly allocated by the Code of Virginia only to the Zoning Administrator and Board of Zoning Appeals ("BZA"). See Count II, ¶¶'s 79-120.

The basis of count II is Sinclair's express assertion that the "statutes confer variance and modification-granting authority on the Zoning Administrator and the BZA." Count II must necessarily fail then since, as the majority concludes, the Waiver Provision is not a mechanism for a zoning variance or modification. My analysis would thus end here.

Despite its holding that the Waiver Provision is not a zoning variance or modification, the majority nevertheless concludes the circuit court erred in granting summary judgment on count II because the Waiver Provision violates the Dillon Rule in delegating legislative zoning power to the planning commission. In reaching this conclusion, the majority ignores Sinclair's actual assertion in count II, which is that the Waiver Provision violates the Dillon

Rule because only a zoning administrator or board of zoning appeals is empowered to grant zoning variances and modifications. Therefore, the majority justifies its holding on a theory that was not advanced in count II nor ruled upon by the circuit court. The issues in a case are made by the complaint, which "is the <u>sine qua non</u> of every judgment." No court can "render its judgment upon a right, however meritorious, which has not been pleaded and claimed." <u>Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.</u>, 221 Va. 1139, 1141, 277 S.E.2d 228, 230 (1981) (quoting <u>Potts v. Mathieson Alkali Works</u>, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)).

Notwithstanding the actual claim made by Sinclair in count II, I disagree that the Waiver Provision is a delegation of legislative zoning power. As the majority acknowledges, in considering challenges to zoning ordinances, we have "repeatedly" held that "an administrative officer or bureau may be invested with the power to ascertain and determine whether the qualifications, facts or conditions comprehended in and required by the general terms of a law, exist in the performance of their duties, and especially when the performance of their duties is necessary for the safety and welfare of the public." <u>Ours Props., Inc.</u>, 198 Va. at 851, 96 S.E.2d at 757 (citations omitted). Thus, "[c]onsiderable freedom to exercise discretion and judgment must, of necessity, be accorded to

27

officials in charge of administering such ordinances." Id. at 851, 96 S.E.2d at 756-57.

The Albemarle County Code directs the planning commission to "[a]dminister the . . . zoning ordinance as set forth in such." Albemarle County Code § 2-406(G). This role is certainly consistent with the duty of planning commissions in Virginia to prepare the zoning ordinances for their respective localities. See Code § 15.2-2285(A). In fact, we have stated that "[t]he role of a planning commission is critical in the zoning process." City Council of the City of Alexandria v. Potomac Greens Assocs. P'ship, 245 Va. 371, 376, 429 S.E.2d 225, 227 (1993).

Sinclair's complaint is based on his objection to approval and construction of the cellular tower, which is a use permitted by right. Albemarle County Code § 18-10.2.1(22). As he states in his complaint, he has no right to appeal from the grant of permission to construct the cellular tower. Instead, he is challenging the Waiver Provision, which permits the approval of an application to disturb a critical slope asserting that such approval constitutes a zoning variance or modification. In applying the Waiver Provision, however, the commission is not permitted to modify a use permitted under the zoning ordinance nor is it permitted to approve disturbance of a critical slope absent the findings set forth by the board of supervisors. The Waiver Provision allows the disturbance of critical slopes upon a finding

28

by the commission, in consultation with the county engineer, that the conditions promulgated by the board of supervisors and set forth in the provision have been satisfied.[4]  Thus, in the scope of its duty to "administer" the zoning ordinance, the commission is given the power to determine the facts and whether those facts comply with the law and policy set forth by the board of supervisors. It is not, however, given the power to deviate or depart from the conditions set forth therein.  Nor is it given the power to change the law or policy as set forth in the zoning ordinance.

> In the instant case, the ordinance merely conferred administrative functions upon the [commission] charged with the duty of carrying out the will and direction of the [board of supervisors]; the legislative purpose was disclosed by the enactment of the ordinance; and, as far as was reasonably practical, the ordinance left to the [commission] charged to act under it merely the

---

[4] In particular, "the commission <u>shall</u> consider the determination by the county engineer" as to whether the developer will address "the rapid and/or large-scale movement of soil and rock, excessive stormwater run-off, siltation of natural and man-made bodies of water, loss of aesthetic resources, and, in the event of septic system failure, a greater travel distance of septic effluent . . . that might otherwise result from the disturbance of critical slopes" to ensure that the disturbance "will not pose a threat to the public drinking water supplies and flood plain areas, and that soil erosion, sedimentation, water pollution and septic disposal issues will be mitigated to the satisfaction of the county engineer."  Albemarle County Code § 18-4.2.5(a)(1)-(2)(emphasis added).  Based on the determination of the county engineer, the commission must find, among other things, that the disturbance "would not be detrimental to the public health, safety or welfare, to the orderly development of the area, or to adjacent properties; [and] would not be contrary to sound engineering practices." Albemarle County Code § 18-4.2.5(a)(2)-(3).

> discretion of determining whether a given status came
> within the provisions thereof.

Ours Props., Inc., 198 Va. at 853, 96 S.E.2d at 758. Cf. Laird v.
City of Danville, 225 Va. 256, 262, 302 S.E.2d 21, 25 (1983)
(authorizing planning commission to rezone property is unlawful
delegation of legislative power).[5]

The majority reasons that the Waiver Provision delegates
legislative zoning power by distinguishing certain facts in Ours
Properties. The majority initially notes that the building permit
in Ours Properties required the building inspector to consider
factors that the Court determined "have a well understood meaning,
and are intended to protect the public welfare, and to furnish a
pattern of conduct to guide a conscientious official in the

---

[5] Delegation to planning commissions of the duty to administer
zoning ordinances has been upheld by other states as well. See,
e.g., Wesley Inv. Co. v. County of Alameda, 151 Cal. App.3d 672,
679 (Cal. Ct. App. 1st Dist. 1984) (rejecting claim that county
improperly delegated legislative power to planning commission and
holding commission could properly administer existing policy set
forth in zoning ordinance in denying site review applications);
Bellemeade Co. v. Priddle, 503 S.W.2d 734, 739-40 (Ky. Ct. App.
1973) (city may delegate to planning commission authority to locate
a "floating zone" since it is not a prohibited use nor is it
authorizing the granting of a variance and ordinance contains
standards for administration); Southland Corp. 7-Eleven Stores v.
Mayor &  City Council of Laurel, 541 A.2d 653, 656 (Md. Ct. App.
1988) (city may delegate to planning commission authority to
determine under zoning ordinance when a proposed building would
create a public hazard and reject site plan); Florka v. City of
Detroit, 120 N.W.2d 797, 803 (Mich. 1963) (zoning ordinance
lawfully conferred power upon planning commission to act on
applications for business permits and, in doing so, determine
whether business injurious to surrounding neighborhood and not
contrary to spirit and purpose of ordinance).

30

performance of his duties under the ordinance."  Ours Props., Inc.,

198 Va. at 853, 96 S.E.2d at 758.  The majority summarily states

that it is unable to determine that the "so-called" public health,

safety and welfare factors identified in the critical slopes

ordinance have a well-understood meaning or furnish a pattern of

conduct to guide the commission.

First, this ground has not been asserted by Sinclair.

Sinclair's claim in count II is that the Waiver Provision violates

the Dillon Rule because it permits the planning commission to grant

zoning variances or modifications in violation of the Code

provisions governing zoning variances and modifications.  Sinclair

does not assert that the Waiver Provision fails to prescribe

sufficient standards to guide the commission.  Furthermore, the

legislative purpose of the critical slopes section of the zoning

ordinance and the factors by which the planning commission is

guided in carrying out that purpose are plainly set forth in

detailed language.[6]  The majority does not explain how the factors

_____

[6]  Section 18-4.2, entitled "Critical Slopes" states:

These provisions are created to implement the
comprehensive plan by protecting and conserving steep
hillsides together with public drinking water supplies
and flood plain areas and in recognition of increased
potential for soil erosion, sedimentation, water
pollution and septic disposal problems associated with
the development of those areas described in the
comprehensive plan as critical slopes.  It is hereby
recognized that such development of critical slopes may

identified as public health, safety and welfare factors do not

"have a well understood meaning" or otherwise fail to "guide" the

commission in considering an application under the Waiver

Provision.  The factors identified in § 18-4.2 and again in § 18-

4.2.5(a) of the ordinance are not alleged by Sinclair to be

ambiguous nor do I believe any such contention could be sustained.[7]

result in: rapid and/or large-scale movement of soil and rock; excessive stormwater run-off; siltation of natural and man-made bodies of water; loss of aesthetic resource; and in the event of septic system failure, a greater travel distance of septic effluent, all of which constitute potential dangers to the public health, safety and/or welfare.  These provisions are intended to direct building and septic system locations to terrain more suitable to development and to discourage development on critical slopes, and to supplement other regulations regarding protection of public water supplies and encroachment of development into flood plains.

[7] The only factor identified by the majority is "loss of aesthetic resources."  It is not clear if the majority views this factor as being an invalid consideration of public welfare or as not having a well-understood meaning.  But the General Assembly's recognition that the aesthetic value of water, deemed a natural resource, is a well-understood and valid consideration for public health and welfare purposes cannot be questioned.  See, e.g., Code § 10.1-1196(B) (guiding principle of watershed planning is that "[p]oorly planned development can increase peak storm flows and runoff volume, lower water quality and aesthetics, and cause flooding and degradation of downstream communities and ecosystems") (emphasis added); Code § 32.1-170(A)(2) (regulations of board of health governing waterworks, water supplies, and pure water "shall be designed to protect the public health and promote the public welfare" including minimum health and "aesthetic standards" for pure water)(emphasis added); Code § 62.1-10(b)(instream beneficial uses of all waters in the Commonwealth include cultural and "aesthetic values") (emphasis added); Code § 62.1-44.3 (the preservation of instream flows for the protection of aesthetic values is a beneficial use of Virginia's waters) (emphasis added); Code § 62.1-242(same); Code § 62.1-

In his complaint, Sinclair states that he "makes no challenge" to "the declaration of purpose in section 18-4.2." Therefore, in concluding it is unable to determine that these considerations "are intended to protect the public welfare," the majority takes a position that is expressly disclaimed by Sinclair. Furthermore, the commission is not only guided, but "shall consider" the determination by the county engineer who must address these same factors and "evaluate the potential for soil erosion, sedimentation and water pollution" under the provisions of the Virginia Department of Transportation Drainage Manual, the Commonwealth of Virginia Erosion and Sediment Control Handbook and Virginia State Water Control Board best management practices. Albemarle County Code § 18-4.2.5(a)(2). See also supra note 4.

The majority also distinguishes Ours Properties because the building permit ordinance satisfied the requirements of due process in that case. The applicant for the building permit in Ours Properties specifically challenged the constitutionality of the ordinance and claimed the ordinance conferred arbitrary power on the building inspector "in violation of due process of law and of the Fourteenth Amendment of the United States Constitution" and was "void for vagueness." Ours Props., Inc., 198 Va. at 850, 96 S.E.2d at 756. Sinclair, however, has not claimed that the Waiver

---

246(A)(1) (state water control board may initiate surface water management area proceeding when a stream has substantial instream

33

Provision is invalid because it violates due process.  Rather,

Sinclair has alleged that the Waiver Provision does not incorporate

administrative appeal and circuit court review rights mandated for

zoning variances and modifications under the applicable Code

provisions.  In fact, Sinclair asserted in the circuit court that

he does not claim the Critical Slopes ordinance is "arbitrary,

unreasonable or discriminatory."  Since we have determined that the

Waiver Provision does not constitute a mechanism for a zoning

variance or modification, the rights to review afforded under those

provisions are not applicable.[8]

---

values as indicated by "aesthetic properties") (emphasis added).
        [8]  In suggesting third parties should have a right of review
of decisions allowing disturbance of critical slopes, the majority
characterizes the Waiver Provision as a "departure" from the zoning
ordinance.  The majority's characterization of the Waiver Provision
as a "departure" from the zoning ordinance is difficult to
reconcile with its conclusion that the Waiver Provision is not a
variance which is defined as a "reasonable deviation" from a zoning
ordinance.  Code § 15.2-2201.  I see no meaningful distinction
between the term "deviation," which is used by Sinclair to describe
the Waiver Provision, and the term "departure," which is used by
the majority.  Webster's Dictionary denotes no distinction either.
It defines "departure" as "a deviation or divergence esp. from a
rule, course of action, plan, or purpose."  Webster's Third New
International Dictionary 604 (3d ed. 1993).
        Furthermore, the majority states that decisions to grant or
deny such "departures" implicate important property rights
affording review under Code § 15.2-2311(A) (allowing an appeal to
the board of zoning appeals from a decision by the zoning
administrator to grant or deny a zoning modification) and Code
§ 15.2-2314 (allowing an appeal to the circuit court from a
decision of the board of zoning appeals with regard to a variance,
special exception, or zoning modification).  Yet, as the majority
concluded, the Waiver Provision is not a zoning variance or
modification.  There is no authority to support the proposition
that a decision which neither changes the use of the property

34

Finally, the majority distinguishes <u>Ours Properties</u> reasoning the building inspector was only permitted to "put into effect the features controlled by the ascertained facts" whereas the Waiver Provision confers upon the planning commission the power to grant or deny a waiver application "<u>or</u> impose conditions in its sole discretion." The Waiver Provision does not, as the majority states, give the planning commission the power to grant or deny a waiver application upon making the required findings "or" to impose conditions in its sole discretion. Rather, it provides that "[i]n granting" the waiver, the commission "may impose conditions deemed necessary to protect the public health, safety or welfare and to insure that the development will be consistent with the intent and purposes of section 4.2."[9] Before it may grant the application, however, the commission is required to make the findings set forth in § 18-4.2.5(a)(3). While it may impose conditions to ensure protection of the public health, safety and welfare factors set

permitted in a particular zoning district nor creates a special use not otherwise permitted in a particular zoning district implicates due process rights of third parties. <u>See</u>, <u>e.g.</u>, <u>Logan v. City Council of the City of Roanoke</u>, 275 Va. 483, 659 S.E.2d 296 (2008) (without statutory authorization third party has no right to challenge approval of subdivision plat).

[9] This contention is also made by the majority in its description of the Waiver Provision under section I of its opinion when it states that the planning commission is authorized to grant a waiver "after making certain findings <u>or</u> imposing conditions it deems necessary." As the language makes clear, the commission is not given an alternative to either make the required findings <u>or</u> impose conditions within its own discretion before granting the application.

forth in the ordinance, it may not impose conditions in its sole discretion in lieu of making the required findings necessary to grant the application.  Nor may it depart from the required findings or change, in any way, the requirements for the application.  Furthermore, our discussion of the discretion afforded the building inspector in Ours Properties was made in the context of our holding that the ordinance did not confer arbitrary and capricious power on the building inspector.  Thus, the majority again goes outside of the claim made in count II to justify its holding.[10]

### III.  CONCLUSION

In sum, I would confine the opinion in this matter to the claims set forth in the complaint.  Since counts I and II of the complaint are premised on Sinclair's assertion that the Waiver Provision is a zoning variance or modification and, as the majority concludes, the Waiver Provision is neither, it was not error for the circuit court to enter summary judgment on both counts.  In any

---

[10]  The majority concludes its rationale by finding the Waiver Provision "functionally analogous" to a special exception, despite the fact that Sinclair has consistently taken the position that the Waiver Provision is not a special exception and should not be treated as such.  As noted above, the Waiver Provision cannot be compared to a special exception, which is "a use not permitted in a particular district except by a special use permit granted under the provisions of this chapter and any zoning ordinances adopted herewith."  Code § 15.2-2201.  Even more puzzling is the majority's statement that "we do not decide today" that the Waiver Provision is a special exception in light of its treatment of the Waiver Provision as such.

event, I believe the majority's attempt to find a delegation of legislative power in the Waiver Provision is unpersuasive. Although the majority concludes that the Waiver Provision is not a zoning variance or modification, and does not decide that the Waiver Provision is a special exception, it concludes the Waiver Provision delegates legislative power to the planning commission despite the fact that the Waiver Provision does not change, deviate, depart from, specially create or otherwise affect the use permitted under the applicable zoning classification.[11]

---

[11] In II.D., the majority explains why it believes a delegation of legislative zoning power to a planning commission is unlawful, despite the fact that defendants have not claimed that legislative zoning power can be delegated to a planning commission. Having already found that the board of supervisors delegated legislative zoning power to the planning commission in the Waiver Provision, there is simply no need to go further with the analysis. Therefore, II.D. is unnecessary dicta.